2007 ME 154

**Shari THIBEAULT**

v.

**Steven A. BRACKETT.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 5, 2007.

Decided: Dec. 27, 2007.

David J. Van Dyke, Esq., Hornblower, Lynch & Van Dyke, Lewiston, ME, for the plaintiff.

David M. Sanders, Esq., Livermore Falls, ME, for the defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

GORMAN, J.

[¶ 1] Steven A. Brackett appeals from a judgment of the Superior Court (Franklin County, *Jabar, J.*) finding in favor of Shari Thibeault on her claim of unjust enrichment and awarding her $40,617 in damages. Brackett argues that (1) a previous small claims judgment Thibeault obtained bars the present action under the doctrine of *res judicata;* (2) the court abused its discretion by declining to impose sanctions for Thibeault's failure to comply with the pre-trial scheduling order; (3) the court erred by finding Brackett was unjustly enriched; and (4) the damages award is improper. We affirm the judgment, but vacate and remand the damages award.

## I. STATEMENT OF FACTS

[¶ 2] Shari Thibeault and Steven A. Brackett began a relationship in New Hampshire in 1996. In June 1998, Thibeault and Brackett moved together to Temple, to property Brackett purchased for $24,000. The deed was in Brackett's name only and both parties testified that the property was intended to belong solely to Brackett. Thibeault's two daughters lived with the couple in Temple until the couple separated in June 2004.

[¶ 3] During the six years that Thibeault lived with Brackett in his home, both parties put money into converting the hunting shack that existed on the property at the time of purchase into a three or four bedroom home worth, in Brackett's estimation, about $150,000. Thibeault was anxious to build a bathroom and equip the shack with basic facilities for her two daughters. Brackett testified that they added two upstairs bedrooms and a bathroom for Thibeault's daughters. Improvements continued gradually as the parties, who worked rarely or not at all, periodically had money available. The improvements were finally finished in 2004 with the completion of a deck.

[¶ 4] After the couple's separation in June 2004, Thibeault filed and received a judgment in a small claims action to recover certain items of her personal property from Brackett. Shortly thereafter, Thibeault filed a complaint in the Superior Court against Brackett alleging (1) breach of contract, and (2) unjust enrichment arising out of her contributions to the improvement and rehabilitation of the home, and claiming $100,000 in damages.[1] Brackett moved to dismiss, arguing that the small claims judgment Thibeault received bars her present action under the doctrine of *res judicata.* The court denied

---

**1.** The court granted Thibeault's motion to amend the original complaint to add a count of constructive trust. Despite the fact that the complaint was never actually amended, the court entered judgment for Brackett on the constructive trust claim. Neither party appeals this issue.

Brackett's motion to dismiss. Brackett then counterclaimed for rent and for repayment of a $1000 loan he made to Thibeault.

[¶ 5] At a one-day jury-waived trial in October 2006, the court admitted Thibeault's Exhibits 7 through 13 over Brackett's objection that Thibeault never filed or submitted an exhibit list to Brackett as required by the pre-trial scheduling order, that the exhibits included "altered" receipts and invoices that Thibeault had written over for clarification, and that they had been grouped, organized, and totaled without Brackett being able to review them before trial.[2] The court found for Brackett on the breach of contract claim, but found that Brackett had been unjustly enriched and awarded Thibeault $40,617 in damages. The court also found for Brackett on his counterclaim for repayment of a $1000 loan, but found for Thibeault on Brackett's claim for rent. Brackett filed this appeal.

## II. DISCUSSION

### A. *Res Judicata*

■ [¶ 6] Brackett's first argument on appeal is that Thibeault's action is barred, under the doctrine of *res judicata,* in particular the doctrine of "bar and merger," by the small claims judgment and should have been dismissed. We disagree.

■ [¶ 7] We review decisions regarding the effect of a prior judgment on a present action, which is a question of law, de novo. *Currier v. Cyr,* 570 A.2d 1205, 1207–08 (Me.1990). Pursuant to 14 M.R.S. § 7485 (2006), which deals with the effect of a small claims judgment on later actions:

[a]ny fact found or issue adjudicated in a proceeding under this chapter, may not be deemed found or adjudicated for the purpose of *any other cause of action.* The judgment obtained shall be res judicata as to the amount in controversy. The only recourse from an adverse decision shall be by appeal.

(Emphasis added.) This Court has found that the doctrine of bar and merger applies to section 7485, and held that a small claims judgment does bar relitigation of the *same* cause of action. *Caporino v. Lacasse,* 511 A.2d 445, 447 (Me.1986). Under the doctrine of bar and merger, relitigation of the same claim, even when different relief is sought and different theories are advanced, is precluded if "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Johnson v. Samson Constr. Corp.,* 1997 ME 220, ¶ 6, 704 A.2d 866, 868 (quotation marks omitted). We apply the transactional test to define "cause of action" and determine whether the matters presented could have been litigated in the first action. *Id.* Pursuant to the transactional test:

[T]he measure of a cause of action is the aggregate of connected operative facts that can be handled together conveniently for purposes of trial. A prior judgment bars a later suit arising out [of] the same aggregate of operative facts even though the second suit relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, and involves evidence dif-

---

2. The court gave Brackett unlimited time to review Thibeault's Exhibits 7 through 13 at trial saying, "I'll give you all the time you want to go through the exhibits to compare them to the exhibits you have to satisfy the problem."

ferent from the evidence relevant to the first case.

*Id.* (citation omitted).

[¶ 8] Here, the two matters do not involve the same cause of action. The first case involved the factual question of what items of Thibeault's personal property Brackett had in his home. Conversely, the second involved the factual question of what contributions Thibeault made to improvements to real property and what she was entitled to in return. Although the two cases may have arisen as a result of the couple's separation, they do not involve the same operative facts and, therefore, are not one cause of action. For this reason, the doctrine of bar and merger does not bar Thibeault's current action.

## B. Discovery Violations

[¶ 9] Brackett's second argument on appeal is that the court abused its discretion by failing to exclude Thibeault's Exhibits 7 through 13, pursuant to M.R. Civ. P. 16(d), as a sanction for her failure to provide an exhibit list as required by a pre-trial scheduling order.[3] We disagree.

[¶ 10] Thibeault's Exhibits 7 through 13 included receipts and invoices organized and grouped by Thibeault for purposes of calculating a total amount spent on improvements. Although Brackett had received all of the receipts and invoices prior to trial, and therefore had the content of the exhibits, he had no notice of the exhibits themselves, as "batched" and organized by Thibeault. Brackett objected on this basis, arguing that Thibeault failed to submit an exhibit list to Brackett as required

by the pre-trial scheduling order, that the exhibits included "altered" receipts and invoices that Thibeault had written over for clarification, and that they had been organized and totaled without Brackett being able to review them before trial.[4] Thibeault claimed to have submitted an exhibit list, but no list was ever entered on the docket.

[¶ 11] We review a determination as to what sanctions, if any, should be imposed for discovery violations, including violation of a pre-trial scheduling order, for abuse of discretion. *In re Misty B.,* 2000 ME 67, ¶¶ 8–9, 749 A.2d 754, 757. Pursuant to M.R. Civ. P. 16(d):

> If a party fails to comply with the requirements of [a scheduling order], the court *may* impose upon the party or the party's attorney, or both, such sanctions as the circumstances warrant, which may include the dismissal of the action or any part thereof with or without prejudice, the default of a party, the exclusion of evidence at the trial, and the imposition of costs including attorney fees and travel.

(Emphasis added.)

[¶ 12] Brackett had an opportunity to review the contents of the exhibits before trial, to take as much time as necessary during the trial to review the exhibits and compare them to his own, and to submit his own version of the same documentary evidence in his Exhibits 11 through 40. For these reasons, the court did not abuse its discretion by failing to impose Rule 16(d) sanctions on Thibeault in the form of excluding her Exhibits 7 through 13.

3. The scheduling order required the exhibit list be provided no later than fifteen days after the discovery deadline.

4. The parties had identical records of the receipts and invoices, both including the write-overs made by Thibeault, the only differences

being the "batching" and the fact that Brackett had no notice of the receipts and invoices in exhibit form as Thibeault planned to present them at trial. Thibeault's writing on the exhibits was not actually admitted in evidence.

## C. Unjust Enrichment

[¶ 13] Brackett's third argument on appeal is that the court erred in finding that he was unjustly enriched. We disagree.

[¶ 14] This Court reviews factual findings, including the elements of unjust enrichment, for clear error. *Forrest Assoc. v. Passamaquoddy Tribe,* 2000 ME 195, ¶ 14, 760 A.2d 1041, 1046. Factual findings are deemed clearly erroneous only when there is no competent record evidence to support them. *Id.* There are three elements of unjust enrichment:

[ (1) ] a benefit conferred upon the defendant by the plaintiff; [ (2) ] an appreciation or knowledge by the defendant of the benefit; and [ (3) ] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Aladdin Elec. Assoc. v. Town of Old Orchard Beach,* 645 A.2d 1142, 1144 (Me. 1994).

[¶ 15] There is evidence in the record to support the court's finding that Thibeault conferred a benefit on Brackett by contributing money to improve his home, held in his name alone, from a hunting shack to a home worth over $100,000 more than the purchase price. Although the court found it difficult to determine exactly who paid for what, Brackett himself admitted that Thibeault made contributions and Thibeault presented receipts, invoices, and testimony regarding her contributions. In addition, there is evidence in the record that Brackett's income alone would have been insufficient to make all of the improvements; he was working rarely, if at all, and lived only on disability, an accident settlement, and proceeds from sporadic vehicle sales. Although Thibeault was motivated to make improvements for her two daughters, the money she put into the home benefited Brackett because he alone owned the property.

[¶ 16] Additionally, the record supports the court's finding that Brackett was aware of the benefit Thibeault conferred on him. Although the parties disagree about the extent of Thibeault's contributions, Brackett testified that Thibeault did in fact contribute to the improvements to the home. Brackett testified that he had initially discouraged Thibeault from contributing, expressing that he wanted the house to be all his, that he had already been through hard times with women, and that he wanted to avoid a situation like this one. Brackett's testimony demonstrates that he was aware that her contributions, which he ultimately accepted, would benefit him.

[¶ 17] Finally, there is evidence in the record that supports the court's finding that retention of the benefit by Brackett, without payment of its value, would be unjust. Brackett now owns and occupies the home to which the court found Thibeault contributed thousands of dollars in improvements. He has not paid Thibeault anything in return and, although she did live with him rent-free for six years, she also contributed to household expenses during that time. Based upon the evidence presented at trial, the Superior Court did not err in finding it would be unjust to allow Brackett to retain the benefit of Thibeault's contributions to improvements without payment of its value.

[¶ 18] Brackett's final argument on appeal is that the damages award is unsupported by the record and is therefore improper. We agree.

[¶ 19] The court determined that Thibeault was entitled to the money she put into the home, but not to any increase in value due to market changes. Additionally, the court found it was impossible to do

a cost accounting, based on the evidence presented, because the parties pooled most, if not all, of their funds. The court, therefore, calculated Thibeault's damages by first figuring the total amount spent on improvements, which it found, based on Thibeault's Exhibits 7 through 13, to be $49,795. Then the court determined the total amount available for improvements, which it found to be $60,980 (Thibeault's share being $39,580 and Brackett's $21,400). This figure consisted only of the "lump sums" the parties received during the six years they lived together: Thibeault's $17,000 disability lump sum, less $7000 spent on a Jeep, her $19,580 accident settlement, and her $10,000 savings; and Brackett's $4500 accident settlement, and $16,900 from the sale of his Corvette, motorcycle, and truck. Finally, the court assigned a ratio, based on each party's share of available funds over the total available funds, and applied that same ratio to the total amount spent. It found Thibeault's amount represented 65% of the total and therefore found Thibeault contributed $32,267 of the total expenditures on the home (or 65% of $49,795).

[¶ 20] The court also found, due to the confusing nature of the evidence presented regarding which expenses each party paid, that the parties equally shared all monthly expenses including mortgage payments. The court used an amortization schedule to determine that Thibeault's contribution to the mortgage payments reduced the principal by $8735, which was added to her damages. The final award was $40,617 plus interest and costs.[5]

[¶ 21] We review damage awards deferentially, disturbing awards "only when it is plain that there is no rational basis upon which the amount of the award may be supported." *James v. MacDonald*, 1998 ME 148, ¶ 11, 712 A.2d 1054, 1058–59 (quotation marks omitted). "A rational basis exists if there is any competent evidence in the record to support [the award]." *Id.* In this case, the trial court's determination of damages was hampered by the confusing and duplicative evidence submitted by the parties.

[¶ 22] Based on the amounts testified to in Thibeault's Exhibits 7 through 13, on which the court relied, the court erred in finding a total of $49,795, the actual total of the figures testified to being $48,798.98. Additionally, the court appears to have double-counted some expenditures such as a $315.87 Home Depot expenditure, a $1500 payment for a hot tub, and various other small expenses.[6]

[¶ 23] The court also erred by including amounts spent on personal property, such as appliances, chairs, sheets, a humidifier, and a bed, in the damages award.[7] These expenditures should not have been part of the award for Thibeault's contributions to real property. The court had correctly noted that the small claims judgment would bar recovery for items of personal property.

---

5. The Superior Court initially stated that Thibeault's award would be $41,002 plus interest and costs, but ultimately awarded her $40,617 plus interest and costs.

6.

| Double-counted Expenses | |
|---|---|
| $ 315.87 | Home Depot expense |
| $1500 | hot tub payment |
| $ 74.70 | rental equipment expense |
| $ 59.21 | rental equipment expense |

7.

| Personal Property Expenses | |
|---|---|
| $ 224.76 | for chairs |
| $ 818.98 | for bed, humidifier and sheets |
| $ 539.95 | for gas range |
| $ 94.48 | for vac and bolts |
| $ 52.37 | for saw |
| $ 315.04 | for washer |
| $1079.99 | for tractor |

[¶ 24] Moreover, because both parties testified that Thibeault did not contribute to mortgage payments or the purchase price of the property, and because no contrary evidence was presented, there is no rational basis for the court's finding that Thibeault contributed to the pay down of the mortgage principal. Finally, there is no evidence in the record that Thibeault had the full amount of her lump sum payments available to contribute to home improvements. Thibeault had two minor daughters and testified that Brackett never supported her, that she had no income until two years after the couple moved to Temple, and that she did not receive a lump sum payment until three years after the move.[8]

[¶ 25] For these reasons, we find the court's award of damages to Thibeault is unsupported by the record.

The entry is:

Judgment affirmed. Damages award vacated and remanded for determination of proper award.

8. The parties testified to the following receipts and expenditures:

| Thibeault's Income | Thibeault's Expenditures | Brackett's Income | Brackett's Expenditures |
|---|---|---|---|
| Disability $17,023 (received 8/31/01); $558/month (beginning 8/01) | Jeep $7000 | Disability $10,000 (received 4/97) $1000/month ($860 initially in 4/97, up to $1273 at time of trial) | Mortgage payments $350/ month |
| Rental Income $700/month (beginning in '00) | Medical expenses $5000 | Sale of truck $3000 or $3500 | Medical payments $20/ month (paid to Thibeault, who then paid bill) |
| Accident settlement $19,586 (received 10/00) | Vacation to FL | Sale of Corvette $4400 | Car payment $100/month (paid to Thibeault, who then paid bill) |
| Personal savings $10,000 (Had in '98 at time of move) | Trips to PA, NJ, Canada | Sale of motorcycle $9000 | Backhoe purchased (Cost $8500, financed by $10,000 loan obtained 1 year before separation, amount of monthly payments unknown) |
| State $ to support children $113/child/month (with no record support, the court found this figure to be $179 per child per month) | Miscellaneous: Credit card bills Household expenses Student loans Christmas expenses | '38 Pontiac Exchanged for $2200 worth of work | |
| Child Support $124/week | | Accident settlement $4500 | |
| Income from working? | | Income from working for "Manpower" $5000 | |