2000 ME 67

**In re MISTY B.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 14, 2000.
Decided April 19, 2000.

David N. Veilleux, Howaniec & Associates, Lewiston, for the appellant.

Andrew Ketterer, Attorney General, David F. Hathaway, Assistant Attorney General, Matthew Pollack, Assistant Attorney General, Augusta, for the appellee.

Christopher L'Hommedieu, Lewiston, for Guardian Ad Litem.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] The mother of Misty B. appeals from orders entered in the District Court (Lewiston, *Gorman, J.*) pursuant to 22 M.R.S.A. § 4036 (1992 & Supp.1999) (preliminary protection order) and 22 M.R.S.A. §§ 4036(1), 4041(2)(A–1) (1992 & Supp. 1999) (final child protection order including a provision allowing the Department of Human Services to discontinue efforts to reunify the parent with her child). The mother contends, inter alia, that the court impermissibly suspended reunification efforts in its preliminary protection order, that she was treated unfairly by the court at the jeopardy hearing, and that the court erred in issuing the jeopardy order and by relieving the Department of its obligation to provide reunification services to the mother. Concluding that the appeal of the preliminary protection order is moot, that the court acted within its discretion in conducting the jeopardy hearing, that there is sufficient evidence to support the issuance of the child protection order, and that procedural errors by the court in relieving the Department of its obligation to reunify Misty with her mother are harmless, we affirm the judgments.

[¶ 2] Misty is the fourth child of the mother. The oldest child has always resided with the mother's parents, and the second child was adopted after Misty's mother consented to termination of her parental rights. The mother's third child

was removed from her custody by the Department and resides with relatives.

[¶ 3] Misty was born on December 9, 1998 and, pursuant to a preliminary child protection order, was removed from her mother's custody in late December of the same year, when the mother's apartment was found in disarray. The entrance to the apartment was damaged, the furniture smashed, and the mother's behavior was bizarre. In addition, the mother was complaining of water contamination in her apartment and that her other children had been taken away from her by the police.

[¶ 4] Following a summary preliminary hearing on December 31, 1998, see 22 M.R.S.A. § 4034(4) (Supp.1999), the court found that Misty was in circumstances of jeopardy, and ordered that custody of Misty remain with the Department, see 22 M.R.S.A. §§ 4034(4), 4036(1)(F) (1992 & Supp.1999). The court also ordered that reunification efforts be suspended and that the Department file a permanency plan with the court. See 22 M.R.S.A. §§ 4034(4), 4036(1)(G–2), 4041(2)(A–1) (Supp.1999).

[¶ 5] A final protection hearing was held in April of 1999, and a child protection order was issued by the court on May 20. See 22 M.R.S.A. §§ 4035, 4036 (1992 & Supp.1999). After an extensive review of the mother's mental health history and the events leading to the Department's petition for custody, the court found that Misty would be in circumstances of jeopardy if placed with her mother, see 22 M.R.S.A. § 4035(2) (1992), and that reunification would be an exercise in futility. Accordingly, the court ordered that reunification efforts be terminated. The mother filed a notice of appeal from that order on June 8, 1999.

[¶ 6] On June 17, the court held a permanency planning hearing. See 22 M.R.S.A. § 4038(7–A) (Supp.1999). Several days later, the court issued a permanen-

cy planning order providing that the "plan for the child is termination of parental rights and placement for adoption." The court also affirmed its prior cease reunification order.

## I.

[¶ 7] The mother contends that the District Court erred in its order following the summary preliminary hearing when it suspended the obligation of the Department to reunify the mother with Misty.[1] The court, however, later conducted a full evidentiary hearing pursuant to 22 M.R.S.A. § 4035 (1992 & Supp.1999), and determined that the Department was to be relieved of its duty to provide reunification services. See 22 M.R.S.A. § 4041(2)(A–1) (Supp.1999). We agree with the Department that the suspension of reunification efforts became moot when the court addressed the same issue at the final protection hearing. See Monroe v. Town of Gray, 1999 ME 190, ¶ 4, 743 A.2d 1257, 1258; see also In re Erica B., 520 A.2d 342, 344–45 (Me.1987). When a decision of the appellate court will not provide an appellant with any " 'real or effective relief,' " we will not review the issue. See Sordyl v. Sordyl, 1997 ME 87, ¶ 4, 692 A.2d 1386, 1387 (quoting International Paper v. United Paperworkers Int'l, 551 A.2d 1356, 1360–61 (Me.1988)). Because the summary preliminary order automatically expired when the final jeopardy order was issued on May 20, 1999, see 22 M.R.S.A. § 4034(2) (1992), we can offer the mother no real or effective relief, see Sordyl v. Sordyl, 1997 ME 87, ¶ 4, 692 A.2d at 1387. The order, therefore, is moot, and because the mother has not established that any exceptions to mootness apply, she has failed to meet her burden of demonstrating "that the collateral consequences of the ruling are substantial enough to justify our consideration of a question with no con-

---

1. The mother was receiving mental health services at the Augusta Mental Health Institute during this period. Despite the order suspending reunification efforts, the Department arranged for visits with Misty while the mother was at AMHI.

tinuing controversial vitality." *See id.* ¶ 6, 692 A.2d at 1388.

## II.

■ [¶ 8] Contrary to its obligation under the pretrial order in this case, the Department failed to provide a list of witnesses and exhibits prior to jeopardy hearing. *See* M.R. Civ. P. 16A. The mother objected at trial and moved to exclude those witnesses and exhibits. The court inquired as. to whether the mother was surprised by any of the witnesses the Department listed at trial, and the mother's attorney did not point to any that were unexpected. The issue was not mentioned again. Moreover, the court did not admit the voluminous packet of materials offered by the Department that the mother's attorney had not been able to review, but left the record open for the parties to reach an agreement as to the admissibility of the materials or to present witnesses through which the materials could be offered. Excerpts from the materials were later added to the record by agreement of the parties.

■ [¶ 9] The mother contends that she was placed "at an unfair and significant disadvantage" by the Department's failure to designate witnesses and exhibits. We review the trial court's determination as to what sanctions, if any, should be imposed for a discovery violation for an abuse of discretion. *See Shaw v. Bolduc,* 658 A.2d 229, 234–35 (Me.1995). A review of the record discloses that none of the witnesses called by the Department were a surprise to the mother. The mother did not argue surprise at trial, nor on appeal does she point to any testimony that surprised her. Moreover, the court allowed the mother additional time to review the documentary evidence. Because the mother has failed to establish that she was prejudiced by the Department's failure to disclose, we conclude that the court acted within its discretion in allowing the Department's witnesses to testify and in admitting in evidence exhibits offered by the Department. *See Bailey v. Sears, Roebuck & Co.,* 651 A.2d 840, 842 (Me.1994).

## III.

[¶ 10] Following the final protection hearing on April 28, 1999, the court issued a child protection order in which it relieved the Department of its duty to provide reunification services.[2] The determination of whether the Department is to be relieved of its duty to provide reunification services is governed by 22 M.R.S.A. § 4041(2) (Supp.1999). The former version of section 4041(2) allowed a court to issue such an order if it found that "[t]he parent is unwilling or unable to rehabilitate and reunify with the child within a time which is reasonably calculated to meet the child's needs." *See* 22 M.R.S.A. § 4041(2)(A)(3) (1992), *amended by* P.L.1997, ch. 715, § B–11 (effective June 30, 1998).

■ [¶ 11] Pursuant to recent amendments to the statute, however, a court may relieve the Department of its reunification responsibilities only if it finds an aggravating factor as defined in 22 M.R.S.A. § 4002(1–B) (Supp.1999), or if it finds that reunification efforts are "inconsistent with the permanency plan for the child." *See* 22 M.R.S.A. § 4041(2)(A–1) (Supp.1999).[3]

2. The mother contends that the court did not apply the correct standard of proof, which the mother argued should be proof by clear and convincing evidence, in its order relieving the Department of its duty to reunify Misty with her mother. The mother's claim is without merit. We have recently decided that issue against the mother's position. In *In re Christmas C.,* 1998 ME 258, ¶¶ 7, 13, 721 A.2d 629, 631–32, we construed the prior cease reunification statute as requiring proof by a preponderance of the evidence. There is nothing in the circumstances of this case, or in the statutes, that would require a different result here.

3. If the court finds the presence of "an aggravating factor," the court may order the Department not to commence reunification or to cease reunification, "in which case a permanency planning hearing must commence within 30 days of the order," 22 M.R.S.A.

In this case, the court did not separately find the presence of an aggravating factor in its May 20, 1999, jeopardy order, nor did it rely on a permanency plan for the child because the hearing on the permanency plan was not held until June 17, 1999, and the permanency plan order was not issued until June 22, 1999. A review of the entire record, however, reveals that in the circumstances of this case, the District Court's procedural error was harmless.

[¶ 12] The trial court found, in its May 20, 1999 child protection order, that the mother could not be a "competent caretaker" and that, because of her mental health history, "reunification [would be] an exercise in futility." Those findings were supported by competent evidence.

 [¶ 13] The court had before it evidence that the mother had a long history of schizophrenia/schizoaffective disorder and substance abuse. Witnesses testified that the mother had not fully accepted that she needs to take her medication to remain stable. In addition, there was evidence of marijuana and alcohol use, even after the mother's discharge from AMHI in March of 1999, as well as evidence that her behavior during supervised visits with Misty demonstrated her inability to safely care for the child.

[¶ 14] If the permanency plan, which called for adoption of the child, had been issued prior to the jeopardy hearing, these findings would have amply supported a determination that reunification efforts were "inconsistent with the permanency plan for the child." [4] *See* 22 M.R.S.A. § 4041(2)(A–1) (Supp.1999). Accordingly, although the court erred in ordering that reunification efforts not begin before it had found an aggravating factor or had formulated a permanency plan, *see* 22 M.R.S.A.

§ 4036(1)(G–2) (Supp.1999). In this case, there was no finding of an aggravating factor, but a permanency planning hearing was held within 30 days of the final protection order relieving the Department of its obligation to provide reunification services.

§ 4041(2)(A–1) (Supp.1999), that error was harmless.

The entry is:

Judgments affirmed.

4. Contrary to the mother's contentions, this evidence was also sufficient to support the court's finding of continuing jeopardy.