2009 ME 95

**In re CODY T.**

Supreme Judicial Court of Maine.

Submitted on Briefs:  July 29, 2009.

Decided:  Sept. 1, 2009.

C. Peter Bos, Esq., Gray & Palmer, Bangor, ME, for the mother.

Margaret Shalhoob, Esq., Bangor, ME, for the father.

Janet T. Mills, Atty. Gen., Nora Sosnoff, Asst. Atty. Gen., Augusta, ME, for the Maine Department of Health and Human Services.

Wayne P. Doane, Esq., Law Offices of Wayne P. Doane, Exeter, ME, for Guardian ad litem.

Panel:  SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1]  The mother and father of Cody T. appeal from the judgment of the District Court (Bangor, *Gunther, J.*) terminating their parental rights pursuant to 22 M.R.S. § 4055(1)(B)(2) (2008).  The mother and father assert that the evidence is insufficient to support, by clear and convincing evidence, the finding of parental unfitness.

Additionally, the father asserts that service by publication in Maine and other unsuccessful efforts to notify him in advance of the jeopardy hearing violated his rights to due process. We affirm the judgment as to the mother. We vacate the judgment as to the father. The issues regarding each parent are different and will be addressed separately.

## I. THE MOTHER

[¶ 2] The record includes evidence to support the court's findings, by clear and convincing evidence, that the mother has failed to make a good faith effort to rehabilitate and address her problems, or even acknowledge a need for rehabilitation. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(iv). The record also supports the court's findings, by clear and convincing evidence, that the mother is unable or unwilling to protect Cody T. from jeopardy and that she is not able to take responsibility for the child and that these circumstances are unlikely to change within a time reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii). The record also supports the court's findings, by clear and convincing evidence, that termination of the mother's parental rights is in the child's best interests. *See* 22 M.R.S. § 4055(1)(B)(2)(a). Accordingly, the judgment terminating the mother's parental rights will be affirmed. *See In re Marcus S.*, 2007 ME 24, ¶¶ 6–7, 916 A.2d 225, 227.

## II. THE FATHER

### A. Case History

[¶ 3] The mother and father lived in Texas when Cody was born in November 2004. The mother and father had separated by May 2005. After the separation, the father apparently had limited contact with Cody. The record contains very little evidence regarding the father's parenting of Cody or of father-son interactions.

[¶ 4] In January 2006, the mother married another man and, in May 2006, she, her new husband, and Cody moved to Maine and began living with the new husband's mother. The mother did not tell the father that she and Cody were leaving or where they were going. The record indicates that the father was quite upset after the mother and Cody disappeared with the new husband. The mother also failed to tell any members of the father's extended family in Texas that she and Cody were leaving or where they were going.

[¶ 5] At some point in mid- to late 2006, after Cody and his mother left Texas, the father was incarcerated in Oklahoma, apparently for drug-related offenses. There is no indication in the record that the father's incarceration was in any way related to this case, to his relationship with people involved in this case, or to any offense that related to injury or risk to the health and welfare of a child. It was ultimately represented that the father would be expected to be released from incarceration in December 2008.

[¶ 6] After they moved to Maine, the relationship between the mother and her new husband deteriorated as a result of mental health issues, substance abuse, and domestic violence. These issues, and the difficulties in addressing them, ultimately led to the termination of the mother's parental rights.

[¶ 7] The Department of Health and Human Services (DHHS) became involved with the family in early 2007, ultimately filing a petition for a preliminary protection order in May 2007. In its petition, DHHS identified the father, but asserted that, according to the mother, he was then incarcerated somewhere in Texas. Based upon the facts asserted in that petition, the

court found Cody to be in immediate risk of serious harm and granted custody of Cody to DHHS, which placed Cody with the new husband's mother. The mother later waived her right to a summary preliminary hearing, and Cody remained in his placement with the new husband's mother.

[¶ 8] Jeopardy was found with respect to the mother in September 2007, and the court entered an order for a rehabilitation and reunification plan for the mother. *See* 22 M.R.S. § 4041 (2008).

[¶ 9] DHHS then initiated efforts to locate and notify the father in Texas. Because those efforts were unsuccessful, DHHS petitioned the court for service by publication. M.R. Civ. P. 4(g). The petition was granted. The father was then served by publication in the *Penobscot Times,* a small newspaper that circulates in Penobscot County. The record is unclear as to why service by publication was sought to be accomplished through publication in the *Penobscot Times* rather than the much more widely circulated *Bangor Daily News.* However, because service by publication through either newspaper would have been unlikely to have accomplished service upon and notice to an individual thought to be incarcerated, and whose family was known to be, in Texas we need not address that issue further.

[¶ 10] After the father was considered to have been served by publication, the court found jeopardy with respect to the father in January 2008. *See* 22 M.R.S. § 4035 (2008). The jeopardy finding was based on abandonment. *See* 22 M.R.S. § 4002(6)(C) (2008).

[¶ 11] When the jeopardy order was issued, the father still was not aware of the child protective proceeding or of the whereabouts of his son. Sometime in the spring of 2008, the father and his family learned that Cody was in Maine and was the subject of a child protective proceeding. The father then obtained court-appointed counsel and filed a motion to vacate the jeopardy order and its finding of abandonment.

[¶ 12] The court held a hearing on the motion to vacate in August 2008, at which the father's sister appeared and testified. Following the hearing, the court found that: (1) the father had not received actual notice of the jeopardy proceeding; (2) he had been incarcerated in Oklahoma at all relevant times; (3) the mother had taken the child to Maine without advising the father or the father's family of the child's whereabouts; and (4) the father had rebutted the court's prior factual finding of abandonment. However, the court denied the father's motion to vacate the jeopardy order. The court determined that even though the father had demonstrated a good excuse for failing to appear at the jeopardy hearing, he had not shown a "meritorious defense" to the jeopardy proceeding. The court concluded that, despite of the lack of notice to the father, jeopardy would have been found with regard to him in any event because his incarcerated status would have prevented him from caring for the child during the course of the child protection proceeding. Significantly, the court also noted in its findings that the father did have "competent relatives" who would have been able to care for the child.

[¶ 13] DHHS filed a petition for termination of the parental rights of both parents. The court conducted hearings on the termination of parental rights petition and for review of proper placement for the child on September 19 and November 20, 2008. At all stages of this hearing, the father was represented by counsel. The father also participated by telephone for a small portion of the hearing. In addition, the father's sister and her husband ap-

peared in person and testified at the November 20 hearing. Counsel for the father advised the court that the father was to be released from incarceration in Oklahoma on December 12, 2008.[1]

[¶ 14] At the hearing, the father, through counsel and through the testimony of his sister, supported a kinship placement with the sister and her family and a delay of three months in the termination proceeding to allow development of evidence of the relationship between the father and Cody once the father had been released from incarceration. The father's sister testified that she was a substitute teacher and her husband was a full-time corrections officer in Texas. She also testified that she and her husband had two children in their home and that they were willing and able to provide a stable and supportive living environment for Cody.

[¶ 15] The testimony also indicated, as found by the court, that had Cody remained in Texas in a location known to the father's relatives, the relatives would have facilitated his visiting with the father while the father was incarcerated. However, because the mother had taken Cody from Texas and not advised the father or his family of the location, the father and his family had no opportunity for contact with Cody for more than two years after the time that he was taken from Texas.

[¶ 16] The father's sister also testified that she and her husband had come to Maine prepared, if ordered by the court, to accept a placement of Cody with them and return with him to their home in Texas.

[¶ 17] On the day after the close of the termination hearing, November 21, 2008, the court entered an extensive judicial review order that removed Cody from the custody of DHHS, ended Cody's placement in Maine, and granted custody of the child to the father's sister and her husband. The result of this order was that the father's sister and her husband were able to return to Texas with Cody, who has since resided with them. The findings and conclusions in the court's supplemental order and review findings dated November 21, 2008, are fully supported by the record developed in these proceedings.

[¶ 18] Two weeks later, on December 5, 2008, one week before the father's anticipated release from incarceration, the court issued its termination order, terminating the rights of both parents. Most of the findings in the order were directed to the difficult circumstances of the mother. The findings supporting termination of the father's parental rights, on the grounds that he was not able to take responsibility for the child within a time necessary to meet the child's needs, were rather limited. The totality of the findings relating to the father's parental fitness were as follows:

> [The father] has been in prison from mid–2006 until the present. The evidence shows no misconduct toward his son, but he has a history of abusing drugs and a history of antisocial behavior. He is also, through no fault of his own, a stranger to his son.... [The father] is not presently able to meet Cody's needs [of immediate security and stability]. (To a certain extent he supported his sister and brother-in-law as caregivers in his stead.)

[¶ 19] The findings regarding parental fitness were supported by a footnote which indicated that "[h]is prison sentence would have prevented day to day contacts without the move to Maine, but regular visits

1. A home study prepared by the Texas Department of Family and Protective Services also indicated a December 2008 release date.

would have been possible, and his family would have made sure they happened."

[¶ 20] The other findings discussing the father related to Cody's best interest. The court stated that Cody considered the mother's estranged husband to be his father and that he would have difficulty accepting someone else as his father, that he needed immediate and extremely competent parenting with security and stability, and that he could not have his parenting arrangements changed again, after the recent shift in custody to the father's sister and her family.

[¶ 21] The court then noted that:

Had [the father] been available a month ago, he would have been given more consideration, but the one relocation to the [father's sister's family] is all that the child can stand.... [The father] was not, by clear and convincing evidence, capable of taking responsibility for Cody within the time necessary for meeting the child's needs.

[¶ 22] These findings were reflective of the record, which contained very little evidence regarding the father's past relationship with the child and his fitness to parent the child or to become a proper parent.

[¶ 23] From this decision, the father appeals, asserting that: (1) he had insufficient notice of the jeopardy proceeding and that failure to enable his participation in the jeopardy proceeding violated his rights to due process; and (2) there is insufficient evidence to support termination of his parental rights.

B. Legal Analysis

[¶ 24] Our review of the court's findings in this case must be guided by several well-established propositions of law.

[¶ 25] First, a parent of a child has a fundamental right to parent that child and to maintain a parental relation-ship free from state interference absent a court finding that the parent is, in some respect, unfit and State involvement in the parental relationship is necessary to avoid harm to the child. *See In re Robert S.,* 2009 ME 18, ¶ 13, 966 A.2d 894, 897–98; *Rideout v. Riendeau,* 2000 ME 198, ¶ 18, 761 A.2d 291, 299.

[¶ 26] Second, findings supporting termination of parental rights must be based on clear and convincing evidence. 22 M.R.S. § 4055(1)(B)(2).

[¶ 27] Third, a party with a clear and convincing evidence burden of proof may prevail only if, considering all of the evidence, the fact-finder can arrive at "an abiding conviction that the truth of [the] factual contentions are highly probable." *Taylor v. Comm'r of Mental Health & Mental Retardation,* 481 A.2d 139, 153 (Me.1984) (quotation marks omitted).

[¶ 28] Fourth, a parent's incarceration, standing alone, does not provide grounds for the termination of parental rights. *Adoption of Hali D.,* 2009 ME 70, ¶ 2, 974 A.2d 916, 917; *see also In re Randy Scott B.,* 511 A.2d 450, 455 (Me. 1986); *In re Daniel C.,* 480 A.2d 766, 768–69 (Me.1984). In considering the parental fitness of an incarcerated parent, the court's focus is not on "the usual parental responsibility for physical care and support of a child, but upon the parent's responsibility" or capacity "to provide a nurturing parental relationship using the means available." *Adoption of Hali D.,* 2009 ME 70, ¶ 2, 974 A.2d at 917 (quoting in part *In re Daniel C.,* 480 A.2d at 769).

[¶ 29] Here, while the record contains minimal evidence that the father, as the court found, may have a history of drug abuse and anti-social behavior, there is no evidence that the father was ever harmful to Cody or any other minor child.

The court did find that the father has become a stranger to Cody, but the court emphasized that this was through no fault of the father. The fault for this rests with the mother, who removed Cody from Texas to Maine and kept the father and the father's family unaware of the child's whereabouts.

[¶ 30] It is notable that the court has now ordered a placement of Cody in Texas with his father's sister's family. In that placement, a protected re-establishment of the parental relationship between the father and Cody could be facilitated. Of note also, the court found that had Cody been in Texas, rather than in Maine, the father's family would have facilitated regular visits between Cody and his father. Of further note is the fact that the father's reported release date was only one week after issuance of the termination order.

[¶ 31] In these circumstances, neither the court's findings, nor the record upon which those findings are based, can support a determination, by clear and convincing evidence, that the father is an unfit parent or that, with support through the court-ordered kinship placement, the father, now released from incarceration, cannot provide a nurturing parental relationship with his child once the relationship with the child can be re-established. Further, considering the recent significant change in the child's home life, there is no evidence that fostering a re-established relationship with his father would promote greater harm to Cody. Accordingly, we must conclude that the court's finding of parental unfitness with respect to the father, in this case, is not sufficiently supported by clear and convincing evidence in the record. Therefore, the judgment regarding termination of parental rights of the father must be vacated.

[¶ 32] With this result, we need not address the issue of sufficiency of notice of the jeopardy hearing.

The entry is:

1. Judgment terminating the mother's parental rights affirmed.

2. Judgment and supplemental order regarding placement and custody of the child affirmed.

3. Judgment terminating the father's parental rights vacated. Remanded for further proceedings consistent with this opinion. We express no opinion regarding the appropriate forum for conduct of any further proceedings after remand.