2012 ME 118

**In re A.M.**

Supreme Judicial Court of Maine.

Argued: Sept. 11, 2012.
Decided: Oct. 23, 2012.

Thomas F. Shehan, Jr., Esq. (orally), Belfast, for appellant mother.

William J. Schneider, Attorney General, Cheryl J. Cutliffe, Student Attorney, and Nora Sosnoff, Asst. Atty. Gen., Office of the Attorney General, Augusta, Michael C. Kearney (orally), Asst. Atty. Gen., Office of the Attorney General, Portland, for appellee Department of Health and Human Services.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] The mother of A.M. appeals from a judgment entered in the District Court (Rockland, *Field, J.*) terminating her parental rights to her son pursuant to 22 M.R.S. § 4055(1)(B)(2) (2011). She argues that, because she was in law enforcement custody on the morning of the trial, the court violated her due process rights by denying her motion to continue the proceedings. She also challenges the admission of testimony from one of the officers involved in her arrest because he had not been included in the Department's witness list, and she argues that the court erred in its factual findings. We conclude that the mother was not deprived of due process and that the court neither abused its discretion in its rulings nor committed clear error in its factual findings. Accordingly, we affirm the judgment terminating the mother's parental rights.

## I. BACKGROUND

[¶ 2] A.M.'s father died in August 2010, when A.M. was one year and nine months old, and the Department of Health and Human Services filed a petition for a child protection order and for preliminary protection four days later. The court (*Westcott, J.*) signed a preliminary protection order on the same day, placing the child in the Department's custody. The court (*Field, J.*) entered an order retaining the placement with the Department on September 2, 2010, after the mother waived the right to a summary preliminary hearing. By that point, the child had been placed in the home of his paternal grandmother.

[¶ 3] The court (*Tucker, J.*) held a hearing and entered a jeopardy order on September 7, 2010, in which it found jeopardy based on the mother's history of involvement in violent domestic relationships, her substance abuse, her resulting incarceration, her only recent commencement of substance abuse treatment, and the Department's recent involvement with the mother after she left another child, who was four years old, outdoors in shorts and a raincoat with no shoes for thirty to forty-five minutes in May 2010.

[¶ 4] In the jeopardy order, the court ordered that the child remain in what it characterized as the safe and appropriate placement with his paternal grandmother. The court ordered the mother to participate in multiple services designed to prevent further substance abuse and prohibited her from using drugs and alcohol. She was to be permitted visitation as approved by the Department. The stated permanency plan for the child was for reunification with the mother.

[¶ 5] Reunification was complicated, however, by the mother's return to incarceration on drug-related convictions. After two additional judicial review and permanency planning orders had been entered maintaining the child's placement and directing continued services for the mother, the Department petitioned for termination of the mother's parental rights on September 23, 2011. On the same day, the mother was served with the petition at the Knox County Jail. The mother received notice in early November that the termination hearing was to be held on December 7, 2011. The mother was released from incarceration on or about November 17.

[¶ 6] On the night of December 6—the night before the trial—the mother was, once again, arrested. The mother was alleged to be under the influence of bath salts at the time of the arrest. She was taken to the hospital, and because she tested positive for cocaine, she was charged with violating terms of her probation.

[¶ 7] The mother was released from the hospital into law enforcement custody during the early morning hours of December 7 before the termination hearing began. At the outset of the hearing, the court was advised that the jail's transportation officer would not be able to bring the mother to court because the mother remained incoherent. The mother's attorney moved to continue the hearing on the ground that the failure to do so would violate the mother's due process rights. The court (*Field, J.*) denied the motion.

[¶ 8] The mother's attorney also objected to the Department calling one of the arresting officers as a witness because he had not been included in the Department's witness list. The court overruled the ob-

jection concluding that the mother's conduct—not any delay on the State's part—caused the need for the additional witness. The court also accepted certain portions of the officer's testimony for the sole purpose of understanding the mother's absence and not for purposes of making the substantive termination decision.

[¶ 9] The mother did not move the court to take her testimony by telephone or video. *See* M.R. Civ. P. 7(b), 43(a).[1] Nor did she ask the court to keep the record open so that she could submit testimony or other evidence at a later time. *See* M.R. Civ. P. 7(b), 43(j).

[¶ 10] After hearing testimony from the child's clinical nurse specialist, the arresting officer, and the paternal grandmother, and after considering several documentary exhibits and the guardian ad litem's reports, the court terminated the parental rights of the mother. The court based its decision on findings that (1) the mother is unfit due to her abandonment of the child, her inability or unwillingness to protect the child from jeopardy or take responsibility for him within a time reasonably calculated to meet his needs, and her failure to participate in a plan to reunify, and (2) termination of parental rights and remaining in the care of the paternal grandmother is in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(iv).

[¶ 11] In particular, the court found that the child has serious and immediate needs due to psychological problems and that the mother cannot meet those needs due to her failure to avoid incarceration, her history of unstable living situations, her abandonment of the child resulting from a failure to participate in reunification efforts, her failure to engage in treatment to address her ongoing serious sub-

---

1. In most instances, the jails and the courts have both the equipment and well-established procedures to enable video court appearances from the jails.

stance abuse problem, and her failure to visit the child with any regularity since the child has been in the Department's custody. The court specifically found that, after initially attending three visits with the child in the fall of 2010 at the paternal grandmother's home, the mother attended only two or three additional visits.

[¶ 12] The mother did not, after the entry of judgment, file a motion for a new trial accompanied by an affidavit summarizing the testimony that she would offer, *see* M.R. Civ. P. 59, or a motion for relief from judgment explaining what information she should have been allowed to provide, *see* M.R. Civ. P. 60(b)(6). She filed a timely notice of appeal from the judgment terminating her parental rights. *See* M.R.App. P. 2.

## II. DISCUSSION

### A. Due Process

[¶ 13] The mother argues that the court violated her due process rights by denying her motion to continue and then allowing one of the officers who arrested her to testify in her absence when he had not been listed as a witness. She argues that the inconvenience of a delay from a continuance was not sufficient to outweigh her interest in being present during a trial at which her fundamental liberty interest in parenting the child was at stake, especially given the continuity of care for the child by his paternal grandmother.

[¶ 14] We review both the determination whether to grant a motion to continue and the determination whether to impose sanctions for a discovery violation for an abuse of discretion. *In re Trever I.,* 2009 ME 59, ¶ 28, 973 A.2d 752; *In re Misty B.,* 2000 ME 67, ¶ 9, 749 A.2d 754. When due process is implicated, we review such procedural rulings to determine whether the process "struck a balance be-

tween competing concerns that was fundamentally fair." *In re Randy Scott B.,* 511 A.2d 450, 453 (Me.1986) (quotation marks omitted); *see also In re Jaime S.,* 120 Conn.App. 712, 994 A.2d 233, 249 (2010) (noting that the review of a denial of a motion to continue based on due process principles must be undertaken pursuant to *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

[¶ 15] "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews,* 424 U.S. at 333, 96 S.Ct. 893 (quotation marks omitted). It is a flexible concept that "calls for such procedural protections as the particular situation demands." *Id.* at 334, 96 S.Ct. 893 (quotation marks omitted); *see, e.g., In re Kristy Y.,* 2000 ME 98, ¶ 6, 752 A.2d 166. To determine whether a party has received due process, three factors must be considered:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. 893; *see In re Kristy Y.,* 2000 ME 98, ¶ 6, 752 A.2d 166.

[¶ 16] "[A] parent of a child has a fundamental right to parent that child and to maintain a parental relationship free from state interference absent a court finding that the parent is, in some respect, unfit and State involvement in the parental relationship is necessary to avoid harm to the child." *In re Cody T.,* 2009 ME 95,

¶ 25, 979 A.2d 81. Thus, as applied to a termination hearing, we have held that, balancing the interests, "where significant rights are at stake, due process requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial fact-finder." *In re Kristy Y.*, 2000 ME 98, ¶ 7, 752 A.2d 166 (footnotes omitted). The evidentiary hearing is required because the risk of an erroneous deprivation of parental rights "is far too great to permit courts to terminate parental rights without such a hearing." *In re Robert S.*, 2009 ME 18, ¶ 16, 966 A.2d 894.

[¶ 17] In the matter before us, there is no question that the mother had notice of the hearing and that the hearing was held before an impartial fact-finder. The issues before us concern whether the mother had an opportunity to be heard and to present evidence and witnesses, and whether she was afforded the right to respond to the claims and evidence presented.

[¶ 18] "[A] termination proceeding is not like a criminal action in which a criminal defendant has the absolute right to physical presence." 4 Alan D. Scheinkman & Matthew W. Lisle, *Child Custody & Visitation Law & Practice* § 28.04[5] (Matthew Bender, Rev. Ed.2012). Due process does not require that a parent be physically present at the termination hearing, "as long as notice of the hearing was given in a manner calculated to give actual notice and the parent had an *opportunity* to be heard." *In re Robert S.*, 2009 ME 18, ¶ 16 n. 1, 966 A.2d 894. When the

Department has demonstrated that the parent received notice of a hearing, a failure to appear "is one means by which a parent may be deemed to have abandoned his or her child," which is a ground for finding parental unfitness. *Id.; see* 22 M.R.S. §§ 4002(1–A), 4055(1)(B)(2)(b)(iii) (2011).

[¶ 19] When incarceration is not involved and a parent fails to appear, courts generally discern no abuse of discretion or violation of due process in proceeding with the hearing if the parent's absence was occasioned by circumstances voluntarily created by that parent. *See, e.g., Alyssa B. v. State*, 165 P.3d 605, 614–16 (Alaska 2007); *J.T. v. Dep't of Children & Families*, 800 So.2d 692, 693–94 (Fla.Dist.Ct. App.2001). Because the mother was arrested and incarcerated, however, her absence cannot be regarded as an entirely voluntary absence. The mother therefore raises due process concerns related to her inability, due to incarceration, to rebut or deny any of the testimony about drug use, abandonment, and failed reunification efforts.

[¶ 20] When a parent is known to be incarcerated in advance of a hearing, the court must, upon request by the parent, provide a meaningful opportunity for the parent to participate in the hearing whether in person, by telephone or video, through deposition, or by other means that will reasonably ensure an opportunity for the parent to be meaningfully involved in the hearing. *See, e.g., In re Randy Scott B.*, 511 A.2d at 452–54; *see also* M.R. Civ. P. 43(a).[2]

---

**2.** An article published in the *Journal of Family Law* highlights the importance of parental presence when the parent is involuntarily incarcerated:

The fact finder must be able to assess the parent's demeanor and credibility, the qual-

ity of the parent-child relationship and other intangible factors in determining whether the parent is unfit. Given the complexity of this task and the risk of error inherent in such a determination, it is difficult to imag-

**[¶ 21]** Courts have regularly addressed the process owed to parents who are known to be in jail at the time when the parties and the court are establishing the procedures to be employed at the termination hearing. Several factors are relevant to the weighing of interests for due process purposes in this context:

- The age of the child, given that delay may seriously affect a very young child, *see In re Juvenile Appeal* [187 Conn. 431], 446 A.2d 808, 813 (Conn. 1982); *In re Darrow* 32 Wash.App. 803, 649 P.2d 858, 861 (Wash.Ct.App. 1982);
- The time that has already elapsed in the matter, *see In re Stephen Tyler R.* 213 W.Va. 725, 584 S.E.2d 581, 588 (W.Va.2003);
- The child's best interest with regard to the parent's attendance, *see id.;*
- The cost and inconvenience of transporting an incarcerated parent to the courthouse, *see In re Darrow,* 649 P.2d at 860; *In re Stephen Tyler R.,* 584 S.E.2d at 588;
- The potential security risk of having the parent present in court, *see In re Darrow,* 649 P.2d at 860; *In re Stephen Tyler R.,* 584 S.E.2d at 588;
- The inconvenience or detriment to the other parties or witnesses, *see In re Stephen Tyler R.,* 584 S.E.2d at 588; and
- Other relevant factors, *see id.*

**[¶ 22]** The trial court must also be able to assess the availability to the parent of alternative means of offering evidence, *see id.,* such as

- Through deposition testimony, *see In re A.S.,* 810 N.W.2d 533 (Table), 2012 Iowa App. LEXIS 62, at *1–4 (Iowa Ct.App. Jan. 19, 2012); *In re J.S.,* 470 N.W.2d 48, 52 (Iowa Ct.App.1991); *In re Vasquez* [199 Mich.App. 44], 501 N.W.2d 231, 235 (Mich.Ct.App.1993) (affirming a termination when the incarcerated parent made no request to be deposed);
- Through telephonic or video testimony, *see, e.g., D.F. v. Fla. Dep't of Children & Family Servs.,* 877 So.2d 733, 734–35 (Fla.Dist.Ct.App.2004); or
- Through a request for contemporaneous or periodic consultation with counsel during the hearing, *see In re Vasquez,* 501 N.W.2d at 235.

**[¶ 23]** In the matter before us, the mother had notice of the hearing, and the court had evidence that allowed it to determine that the mother had engaged in conduct just before the trial that led to her arrest. Although one of the arresting officers was permitted to offer testimony and the mother was not available to rebut the evidence because her motion for a continuance was denied, the mother could have sought to supply additional evidence through several alternative means available during or after the hearing:

- A motion to leave the record open or to allow the record to be reopened pursuant to M.R. Civ. P. 7(b) and 43(j) to allow the mother to provide live, video, or telephonic testimony, *see* M.R. Civ. P. 43(a) (authorizing a court to, "on its own motion or for good cause shown upon appropriate safeguards, permit presentation of testimony in open court by contemporaneous transmission from a different location"); *see also In re Jaime S.,* 994 A.2d at 251–52;

ine how parental unfitness can constitutionally be evaluated in the parent's absence. Philip M. Genty, *Procedural Due Process Rights of Incarcerated Parents in Termination* *of Parental Rights Proceedings: A Fifty–State Analysis,* 30 J. Fam. L. 757, 780 (1991) (footnote omitted).

- A motion for a new trial stating the basis for the motion and including an affidavit from the mother presenting the evidence that she would offer, *see* M.R. Civ. P. 59; or
- A motion for relief from judgment explaining what information she should have been allowed to provide and why that information justified relief from the judgment, *see* M.R. Civ. P. 60(b)(6).

She made no effort to seek relief through any of these means. At no time did the mother make an offer of proof, M.R. Evid. 103(a)(2), indicating what additional relevant information might be provided to the court by her presence or her testimony. Thus, although procedures are in place to safeguard the rights of parties who wish to offer evidence after trial, the mother failed to pursue any of these options and made no showing to the court of what additional evidence she wished to offer.

[¶ 24] Even on appeal, the mother does not explain how her participation in the trial could have affected the court's findings, such as the finding that she had abandoned the child by failing to communicate meaningfully with the child after placement with his grandmother in fall 2010. *See* 22 M.R.S. §§ 4002(1–A), 4055(1)(B)(2)(b)(iii). Nor has the mother suggested any inaccuracies in the testimony from the officer who arrested her.

[¶ 25] The mother's failure to explain on appeal how her absence or the officer's testimony could have affected the trial or its outcome is relevant in determining on appeal whether she has been deprived of due process. *See In re Juvenile Appeal,* 446 A.2d at 812; *In re Jaime S.,* 994 A.2d at 250–53; *In re HGB,* 306 N.W.2d 821, 825–26 (Minn.1981) (affirming a judgment when parent never suggested what she might offer in her defense and was unlikely to be able to explain away her failure to cooperate or her "5 months of absence, silence, and total disregard"); *In re Stephen Tyler R.,* 584 S.E.2d at 588.

[¶ 26] Here, notwithstanding the efforts of the mother's counsel, who was available to her throughout the proceedings, she has failed to proffer any evidence or information demonstrating that the denial of the motion to continue was responsible for the court's ultimate findings (1) that the mother, who had visited the child only three times in one year, was unfit due to abandonment, a failure to participate in reunification, or an unwillingness or inability to protect the child from jeopardy or take responsibility for him within a time reasonably calculated to meet his needs, and (2) that the child's best interests were served by termination of the mother's parental rights and continued residence with the paternal grandmother, who testified that she wished to adopt him. *See* 22 M.R.S. § 4055(1)(B)(2); *see also In re Robert S.,* 2009 ME 18, ¶ 15, 966 A.2d 894 (noting that only one ground of parental unfitness is necessary to support a termination of parental rights when that termination is in the child's best interest).

[¶ 27] Given the availability of procedural mechanisms designed to safeguard the mother's right to offer evidence during and after the close of the hearing, *see In re Stephen Tyler R.,* 584 S.E.2d at 588, and given that a parent's presence is not mandatory at a termination hearing, *see In re Robert S.,* 2009 ME 18, ¶ 16 n. 1, 966 A.2d 894, we conclude that the mother had an opportunity to be heard and was not deprived of the due process rights to introduce evidence and present witnesses, *see In re Kristy Y.,* 2000 ME 98, ¶ 7, 752 A.2d 166, and that the court, on this record, did not abuse its discretion in determining that the hearing should proceed and that the arresting officer would be allowed to testify, *see In re Trever I.,* 2009

ME 59, ¶ 28, 973 A.2d 752; *In re Misty B.*, 2000 ME 67, ¶ 9, 749 A.2d 754.

### B.  Finding of Unfitness

[¶ 28]  The mother contends that the court improperly made findings regarding the location of her housing when no evidence had been offered regarding the nature of that facility or the mother's residence there, and that the court should not have relied on the self-interested paternal grandmother's testimony.

[¶ 29]  We review factual findings for clear error and will reverse a finding only if

(1) there is no competent evidence in the record to support it, or (2) it is based on a clear misapprehension by the trial court of the meaning of the evidence, or (3) the force and effect of the evidence, taken as a total entity, rationally persuades to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case.

*In re Heather G.*, 2002 ME 151, ¶ 12, 805 A.2d 249 (quotation marks omitted).

[¶ 30]  Regarding the nature of the mother's housing and residence during the child protection proceedings, "a parent's incarceration, standing alone, does not provide grounds for the termination of parental rights." *In re Cody T.*, 2009 ME 95, ¶ 28, 979 A.2d 81. "In considering the parental fitness of an incarcerated parent, the court's focus is not on the usual parental responsibility for physical care and support of a child, but upon the parent's responsibility or capacity to provide a nurturing parental relationship using the means available." *Id.* (quotation marks omitted).  A failure to communicate with a child for a substantial period of time both before and during incarceration can, however, demonstrate abandonment of the child.  *See Adoption of Hali D.*, 2009 ME 70, ¶ 3, 974 A.2d 916; *see also* 22 M.R.S. §§ 4002(1–A)(A), 4055(1)(B)(2)(b)(iii).

[¶ 31]  The mother's attorney reported to the court that he had learned from the guardian ad litem that the mother was residing at a particular facility before her arrest.  In the absence of any contradictory evidence, the court did not err in mentioning that fact in its findings.  Further, even if the finding were erroneous, that error would be harmless because the single factual finding regarding the mother's specific housing just before her arrest does not undermine the central findings cited by the court in support of its decision:  that the mother had minimal communication with the child over the course of more than a year, failed to establish stable housing, and failed to avoid drug use and incarceration.  *See* M.R. Civ. P. 61; *see also In re Natasha S.*, 2008 ME 54, ¶ 16, 943 A.2d 602.  All of the court's other findings are supported, including by the testimony of the child's custodial grandmother whose credibility the trial court was in the best position to weigh and evaluate.  *See In re Kayla M.*, 2001 ME 166, ¶ 6, 785 A.2d 330.  On this record, the State has met the high burden of persuading us that it is highly probable that the single finding about the precise location of the mother's most recent housing, even if it were erroneous, had no prejudicial effect and did not affect the outcome.  *See In re Natasha S.*, 2008 ME 54, ¶ 16, 943 A.2d 602; *see also* M.R. Civ. P. 61.

The entry is:

Judgment affirmed.