MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2017 ME 227
Docket:        Cum-17-266
Submitted
 On Briefs:    November 29, 2017
Decided:       December 7, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.


IN RE ALEXAVIER G. et al.


PER CURIAM

[¶1]  The mother of Alexavier G. and Amaiya W. appeals from the District Court's (Portland, *Eggert, J.*) judgment terminating her parental rights to the children pursuant to 22 M.R.S. § 4055(1)(A)(1)(a), (1)(B)(2)(b)(i)-(ii), (iv) (2017).  She challenges the sufficiency of the evidence to support the court's findings that she failed to take responsibility for her children, is unwilling and unable to protect the children from jeopardy, and that both of these circumstances are unlikely to change within a time reasonably calculated to meet the children's needs.[1]  She also argues that the court abused its discretion by refusing to continue the termination hearing to allow a witness of hers to testify.  Because competent evidence supports the court's findings and we

---

[1] The mother does not dispute the finding that she has not made a good faith effort to rehabilitate and reunify with her children.  That finding alone is sufficient to support the court's termination of her parental rights.  *See In re Hope H.*, 2017 ME 198, ¶ 8, 170 A.3d 813.  The mother's failure to contest this finding in her brief constitutes a waiver of this issue on appeal.  *See Larrabee v. Town of Knox*, 2000 ME 15; ¶ 1 n.1, 744 A.2d 544; *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 37, 762 A.2d 551; M.R. App. P. 9(a) (2016).

conclude that the court acted within its discretion when it declined to continue the hearing for testimony that was cumulative and not likely to affect the judgment, we affirm.

[¶2] The court made the following findings of fact, which have ample support from competent evidence in the record:

> The Jeopardy Order required [the mother] to participate in a substance abuse evaluation to determine the appropriate level of treatment, drug testing, mental health counseling, . . . [a diagnostic] evaluation, parenting education, and visitation with the children. At the time . . . [the mother] was incarcerated, but was released two weeks later. . . . [S]he was free from jail only six days before she was arrested for a probation violation for . . . drug use.

> . . . She has never fulfilled [a substance abuse evaluation] to her detriment because the Department was not willing to fund a[n] . . . inpatient placement without that evaluation. She also did not complete the required [diagnostic] evaluation, and has not been in any consistent mental health counseling.

> To her credit, [the mother] did take some steps toward her drug treatment while she was released. . . . [But then] she was arrested again . . . on a probation violation, testing positive for cocaine, oxycontin, and benzodiazepines. . . . Although the caseworker met her a few days after her release, she was unaware that the mother had used again . . . just before entering [treatment].

> This has been the cycle of the mother for many years. . . . She is, in her own words, a "chronic relapser." Despite times when she was not using, this chronic relapsing is all that her children have known. It has affected these children, most noticeably [the son], who worries about her constantly. [The son's] . . . significant mental health and behavioral needs . . . resulted in juvenile justice involvement for an assault on the mother. The children were

present when she was arrested [shortly after they entered the Department's custody] . . . .

. . . The reality is that she is in the early phases of her recovery and . . . the process will take up to [twenty-four] months . . . .

. . . .

. . . [The children] have serious behavioral and mental health needs. They have been in therapeutic foster placements and need significant supports. . . . The son has traumatic life experiences and fears that would burden an adult; he is only [twelve] years old.[2]

. . . .

[The daughter] is only four years old, but has been diagnosed with [p]ost-traumatic [s]tress [d]isorder. . . .

. . . .

. . . Clearly, it is in the best interests of the children that they have permanency now. They have waited for their mother for the [sixteen] months of this case and really their whole lives . . . .

[¶3] The court's findings regarding the mother's insufficiently treated substance abuse and mental health issues, as well as their past and potential detrimental effects on the children when they are in her care, support each of the independent grounds for termination of the mother's parental rights. *See* 22 M.R.S. § 4055(1)(A)(1)(a), (1)(B)(2)(b)(i)-(ii), (iv); *In re Mya E.*,

---

[2] The court found that the son had witnessed his mother doing drugs and that he once "had to pull the needle out of her arm."

4

2017 ME 93, ¶¶ 2, 4, 8, 161 A.3d 708; *In re Haylie W.,* 2017 ME 157, ¶¶ 2-3, 167 A.3d 576.

[¶4]  Contrary to the mother's contention, the court did not abuse its discretion by declining to continue the hearing to allow one of her witnesses to testify that the Department should have referred her to residential treatment; she has not articulated any prejudice, and we discern none from the record, that resulted from the exclusion of this cumulative testimony.  *See* M.R. Civ. P. 40(c), (d) (2017); *In re A.M.,* 2012 ME 118, ¶¶ 14-15, 24-27, 55 A.3d 463; *In re M.B.,* 2013 ME 46, ¶ 34, 65 A.3d 1260.

The entry is:

Judgment affirmed.

---

Deborah Munson Feagans, Esq., Gorham, for appellant Mother

Janet T. Mills, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket numbers PC-2016-04 and PC-2016-05
FOR CLERK REFERENCE ONLY