MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2019 ME 147
Docket:        Som-19-152
Submitted
  On Briefs:   September 10, 2019
Decided:       September 17, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## IN RE CHILDREN OF BENJAMIN W.

HJELM, J.

[¶1]  Benjamin W. appeals from a judgment entered by the District Court (Skowhegan, *Benson, J.*) terminating his parental rights to his two youngest children.[1]  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i), (ii), (iv) (2018).  He asserts that the court erred by denying his motion to continue when he was absent during the second day of the hearing because he had been arrested at the courthouse shortly before the proceedings began, and he challenges the court's conclusion that termination of his parental rights was in the children's best interests.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  In April of 2018, the Department of Health and Human Services filed a petition for a child protection order and preliminary protection order for the

---

[1]  The father also has two older children.  The termination petition filed by the Department does not encompass either of them, although one is also the subject of a child protection action.

2

two children at issue here, who were then ten and four years old.  22 M.R.S. §§ 4032, 4034 (2018).  The petition alleged that between 2015 and 2018, the Department had received reports that the children were at risk due to both parents' substance use, the presence of dangerous individuals in their home, and neglect.  The Department further alleged that the father had exposed the children to extreme violence.  On the same day the petition was filed, the court (*Fowle, J.*) entered a preliminary protection order, placing the children in the Department's custody. *Id.* § 4034(2).  The parents later waived the opportunity for a summary preliminary hearing. *See id.* § 4034(4).

[¶3]  In August of 2018, the court (*Benson, J.*) entered an agreed-to jeopardy order as to both parents, *see* 22 M.R.S. § 4035 (2018), based in relevant part on the father's "significant substance abuse, as well as severe violence," including domestic violence he had perpetrated against the children's mother.  At the end of 2018, the Department petitioned to terminate both parents' parental rights, 22 M.R.S. § 4052 (2018), and in March of 2019 the court held a two-day contested hearing on the termination petition as to the father.[2]

---

[2] Over the Department's objection, the court continued the hearing as to the mother to allow her to participate in a diagnostic evaluation.  Her parental rights were not adjudicated in the judgment that led to this appeal.

[¶4]  The father completed his testimony on the first day of the hearing. Two weeks later, on the morning of the second day of the hearing and just before the hearing began, the father was arrested following an altercation in the courthouse lobby.[3]  After the arrest, his attorney moved the court to continue the second day of the hearing until the father was available.  The court denied the motion, finding that the father's absence was the result of his own voluntary conduct.  *See In re A.M.*, 2012 ME 118, ¶ 19, 55 A.3d 463.  In the resulting termination judgment, the court also noted that the father failed to make any post-trial offer of proof as to what "additional relevant information [he] might have . . . provided."

[¶5]  After the hearing proceeded and the parties completed the presentation of evidence, the court orally stated its findings and its ultimate conclusion that it would grant the termination petition.  The court subsequently issued a written judgment that contained the following findings, which the court stated were based on clear and convincing evidence and which are supported by competent evidence in the record.  *See* 22 M.R.S. 4055(1)(B)(2) (2018); *Vibert v. Dimoulas*, 2017 ME 62, ¶ 15, 159 A.3d 325.

---

[3] During the colloquy about the effect of the father's arrest on the scheduled hearing, the mother's attorney and the children's guardian ad litem reported to the court that the father was taken into custody after he threatened the mother that he would "smash her face into a million f-ing pieces."

[A]side from attending [the court-ordered diagnostic evaluation, the father] has not engaged in any service requested by the Department or [o]rdered by this Court. He failed . . . to attend random drug screens requested by the Department; he failed to attend a certified Batterer's Intervention Program; he failed to engage in any meaningful individual mental health treatment; he failed to engage in any parenting education classes; he failed to maintain safe and stable housing that is free from domestic violence, drugs, and alcohol; and he failed to refrain from criminal activity.

[The father] can charitably be described as an extraordinarily difficult individual to work with. In this case, the Department went to heroic lengths in its attempts to work with [the father], . . . in spite of the father's penchant for vulgar behavior and language at the very least, and proclivity and potential for violence at the worst.

[The father] has simply refused to engage in a single service outside of the medication assisted treatment he was receiving on his own . . . before the Department became involved. The Court finds that even this purported engagement in substance abuse treatment is incredible. It also finds that [the father] went out of his way to obstruct the Department from obtaining even those treatment records. [The father] flatly, frequently, and offensively[] refuses to entertain the reality that he has any issues to address as a parent.

[T]he Department's repeated efforts to engage [the father] in reunification and rehabilitation services have come to nothing. [The father] made it clear during his testimony that he was still unwilling to engage in services . . . . Rather, he asserted he was being railroaded and wished to make it clear he was requesting an appeal before the hearing started.

During this . . . proceeding the children's addresses needed to be kept confidential to protect the children from the threat their father poses to their physical, psychological and emotional

well-being. [One child] has been in crisis on more than one occasion during this action and has required in-patient mental health treatment. In fact, [that child] went into a crisis unit the night before the second day of the termination hearing and this Court concludes that this fact is strongly indicative of a need for permanency.

After almost a year in foster care with no engagement in services in any measurable amount by their father, the clock has run out and it is time for [the children] to have the permanency they deserve.

[¶6] Based on these findings, the court concluded that the father was unwilling or unable to protect the children from jeopardy and unwilling or unable to take responsibility for the children and that those circumstances were unlikely to change within a time reasonably calculated to meet their needs; that the father failed to make a good-faith effort to rehabilitate and reunify with the children; and that termination of his parental rights was in the best interest of each child. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i), (ii), (iv).

[¶7] The father filed a timely appeal. *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

A.    Denial of the Father's Motion to Continue

[¶8] We review the denial of a motion to continue for an abuse of discretion, *In re A.M.*, 2012 ME 118, ¶ 14, 55 A.3d 463, and review de novo

"whether an individual was afforded procedural due process," *In re Adden B.*, 2016 ME 113, ¶ 7, 144 A.3d 1158.

[¶9]  In the context of a hearing on termination of parental rights, "'due process requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial factfinder.'"  *In re A.M.*, 2012 ME 118, ¶ 16, 55 A.3d 463 (quoting *In re Kristy Y.*, 2000 ME 98, ¶ 7, 752 A.2d 166 (footnotes omitted)). A parent's voluntary absence from the termination hearing does not, by itself, constitute the denial of that parent's due process.  *Id.* ¶ 19; *see also In re Adden B.*, 2016 ME 113, ¶¶ 8-9, 144 A.3d 1158.

[¶10]  The father did not attend the second day of the termination hearing because he had been arrested at the courthouse shortly before the hearing was to begin.  The father's attorney requested that the court continue the hearing, but the court denied the motion, finding that the father's absence was voluntary because he had chosen to engage in the conduct that led to his arrest.  We have held in a termination case, however, that when a parent is arrested the night before the hearing and is not brought to the courthouse the following day, the resulting "absence cannot be regarded as . . . entirely voluntary."  *In re A.M.*, 2012 ME 118, ¶ 19, 55 A.3d 463.  Yet because a parent does not have the

unqualified right to be physically present at a termination hearing, the dispositive question is not whether the parent's absence is voluntary but, rather, whether that absence results in a deprivation of the parent's right to due process. *Id.*

[¶11]  There was no such deprivation here.  The father testified extensively during the first day of the hearing, and all parties completed their examination of him.  On the second and final hearing day, after the court ruled that it would proceed with the hearing, the father did not ask the court to provide an alternative mechanism for him to be able to participate.  *Id.* ¶ 20 ("When a parent is known to be incarcerated in advance of a hearing, the court must, *upon request by the parent*, provide a meaningful opportunity for the parent to participate in the hearing whether in person, by telephone or video, through deposition, or by other means that will reasonably ensure an opportunity for the parent to be meaningfully involved in the hearing." (Emphasis added.)).

[¶12]  Further, the father did not pursue any number of additional processes that were available to protect any due process right that he now claims was at stake.  For example, he did not request that the court leave the record open, *see* M.R. Civ. P. 43(j); he did not seek to augment the record with

additional evidence, *see id.*; and he did not make an offer of proof describing any additional relevant information he might have provided on the second day of the trial—a point particularly salient here because of the extensive testimony he provided on the first hearing date, ending with all parties stating to the court that they had no further questions to ask him, *see In re A.M.*, 2012 ME 118, ¶ 23, 55 A.3d 463. And on appeal he has not explained how his absence on the second day affected the court's findings, which were supported by abundant evidence. *See id.* ¶ 24.

[¶13] For these reasons, the resumption of the termination hearing when the father was not present did not deprive him of his right to due process.

B.    Best Interests of the Children

[¶14] The father next challenges the court's conclusion that termination of his parental rights was in the children's best interests and will provide the children with "permanence and stability."[4] *Adoption of Isabelle T.*, 2017 ME 220, ¶ 49, 175 A.3d 639. We review a trial court's "factual findings related to the child's best interest for clear error, and its ultimate conclusion regarding the

---

[4] The father does not challenge the court's conclusion that the Department had proved, by clear and convincing evidence, three kinds of parental unfitness. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii), (iv) (2018). On this record, such a challenge would be unavailing. *See In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260 ("Where the court finds multiple bases for unfitness, we will affirm if any one of the alternative bases is supported by clear and convincing evidence.").

child's best interest for an abuse of discretion." *In re Children of Nicole M.*, 2018 ME 75, ¶ 12, 187 A.3d 1 (citations omitted) (quotation marks omitted).

[¶15] In determining whether termination of parental rights is in a child's best interest, the court must consider "the needs of the child, including the child's age, the child's attachments to relevant persons, periods of attachments and separation, the child's ability to integrate into a substitute placement or back into the parent's home and the child's physical and emotional needs." 22 M.R.S. § 4055(2) (2018). Other factors relevant to the best interest determination are "the harm the children may suffer if the parent's rights are not terminated, as well as the children's need for permanence and stability." *Adoption of Isabelle T.*, 2017 ME 220, ¶ 49, 175 A.3d 639. Thus, a court's factual findings "that bear on parental unfitness may also be relevant to the question of whether termination is in the child's best interest." *In re Children of Christopher S.*, 2019 ME 31, ¶ 8, 203 A.3d 808.

[¶16] Here, much of the evidence demonstrating the father's parental unfitness also bore on the children's best interests. With support in the record, the court found, for example, that the father had not made even marginal progress toward reunification, that he was not receptive to the services he needs to become a safe and nurturing parent, and that he posed a threat to the

physical, psychological, and emotional well-being of the children, one of whom is particularly fragile.[5] *See In re Hope H.*, 2017 ME 198, ¶¶ 9-10, 170 A.3d 813. While this evidence supported the court's determination of parental unfitness, it also demonstrated that the children should be freed from the father's parental bonds. The court's best interest determination was well within its discretion.

The entry is:

> Judgment affirmed.

---

Wayne Doane, Esq., Exeter, for appellant father

Aaron M. Frey, Attorney General, and Zach Paakkonen, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Skowhegan District Court docket number PC-2018-34

---

[5]  We are not persuaded by the father's argument that the court's best interest determination should be affected by the pendency of the termination petition as to the mother. *See In re Children of Christopher S.*, 2019 ME 31, ¶ 10, 203 A.3d 808.