MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2015 ME 123
Docket:        Ken-15-19
Submitted
 On Briefs:    July 1, 2015
Decided:       September 3, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, <u>MEAD</u>, GORMAN, and JABAR, JJ.

## IN RE L.D.

MEAD, J.

[¶1]   The father of L.D. appeals from a judgment entered by the District Court (Augusta, *Stanfill, J.*) terminating his parental rights to the child and denying his kinship placement request.   We affirm the judgment terminating his parental rights to the child.   We dismiss the appeal with regard to the kinship placement request pursuant to 22 M.R.S. § 4006 (2014).

## I.  BACKGROUND

[¶2]   L.D. was born on May 8, 2013, premature and severely drug-affected due to the mother's use of opiates during the pregnancy.   The mother had multiple positive drug screens during her pregnancy, and L.D. tested positive for morphine at birth.   The father has a severe and long-standing drug addiction.   When L.D. was born, the father, who denied paternity, was on probation as a result of a conviction for unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S.

§ 1103(1-A)(A) (2014). Both parents fell asleep while feeding and caring for L.D. at the hospital.

[¶3] A preliminary protection order was issued on May 23, 2013. L.D. was discharged from the hospital and placed with her mother's cousin on May 29, 2013, and the Department of Health and Human Services (DHHS) started an investigation into the paternity of the child. Less than a month later, L.D. was placed in a foster home with nonrelative foster parents.

[¶4] In July 2013, the father was arrested for violating his probation and was incarcerated until January 2014. While the father was incarcerated, on October 8, 2013, the same day that paternity testing results established that he was the father of the child, the court entered a jeopardy order as to the father finding that he had a substance abuse issue, numerous criminal convictions, and was unable to protect L.D. from the mother's substance abuse.[1]

[¶5] When the father was released from custody, he attended visits with L.D. and participated in reunification efforts. However, the father again began to use drugs with the mother soon thereafter, and his visits with L.D. became inconsistent. In March 2014 the father was admitted to a methadone clinic and admitted to using heroin. He continued with the methadone clinic for about one

---

[1] The court entered a jeopardy order as to the mother on August 26, 2013.

month, missed some drug screens, and in April 2014 tested positive for opiates twice.

[¶6] On April 10, 2014, both parents attended a daylong evaluation of L.D., but they appeared to be under the influence of drugs and disinterested in the evaluation process. In the late morning, the father received a phone call and both parents left the evaluation and did not return for the scheduled afternoon session. The next day, the father was arrested for violating his probation. His probation was revoked on April 18, 2014, and he was sentenced to eighteen months in custody.[2]

[¶7] In June 2014, while the father was incarcerated, DHHS filed a petition to terminate the parental rights of both parents. In September 2014, while still serving his sentence, the father entered a pre-release center and was able to participate in supervised visits with L.D. again. On November 17-18, 2014, the court held a hearing on the petition. The mother failed to appear, but the father, who was still serving his sentence at the time of the hearing, did appear. At the time of the hearing the father was doing very well. Since being at the pre-release center, all of the father's drug tests were negative and he was fully participating in all classes and services offered to him.

---

[2] The father's probation was revoked for (1) failure to refrain from the use or possession of illegal drugs, (2) failure to report, and (3) failure to refrain from new criminal conduct (theft).

4

[¶8]  At the termination hearing the father requested that L.D. be placed with his brother and the brother's wife.  The brother and his wife joined in the request. The brother had served in the military for fourteen years, and at the time of the hearing he was pursuing a bachelor's degree with a double major in secondary education and special education.  The brother's wife was pursuing a bachelor's degree in accounting.  They have two children of their own and, because one of those children has some challenges, the brother's family already utilizes many of the same or similar services that L.D. is receiving.

[¶9]  The brother was at the hospital soon after L.D. was born in May 2013, but was told that his involvement had to be limited until DNA testing was completed on the father, which did not occur until October 2013.  By that time, L.D. had already been placed in a nonrelative foster home.  The brother and his wife sought visitation with L.D., and underwent background checks at the request of DHHS.  At the termination hearing, the brother testified that he had believed L.D. was living with the mother's family until the father informed him otherwise just after the petition for termination of parental rights was filed.  After the petition was filed in June 2014, the brother and his wife continued to actively seek contact with L.D., but their schedules made it difficult to arrange visits.  In September 2014, DHHS completed a study on the family and found the brother's home to be appropriate for L.D.  In October 2014, DHHS brought L.D. to the brother's home

to meet them. From the time of the home visit until the hearing, the brother's wife attended several weekly supervised visits with L.D. At the time of the hearing, the brother and his wife had completed the foster parent licensing application, but DHHS was still reviewing it.

[¶10] L.D., who was eighteen months old at the time of the hearing, had been with the same foster family for her entire life except for the first six weeks. After birth, she suffered from tremors, shaking, uncontrolled crying, and "screeching."[3] She was also developmentally delayed, and although the delays have improved, she still has significant needs. At the time of the hearing she had made significant progress with her gross motor delays, but she continued to have fine motor delays, as well as speech, language, and cognitive delays. She also continued to screech and "stiffen."[4] L.D. has bonded with her foster family, and they have been exceptional foster parents and strong advocates for her. She needs structure and routine, which they provide, and their home is safe and appropriate. The foster parents are the only family L.D. has ever known and she is an integral part of their family. They have two daughters of their own and another foster child who is younger than L.D. The foster parents would like to adopt her.

---

[3] At the hearing the foster mother described L.D.'s screeching: "[I]t's not like a normal child when she would want something and you scream. It's a very ear-piercing—just goes right through you screech. High pitched screaming."

[4] At the hearing the foster mother explained that L.D. "stiffens her legs right out straight and stiffens her arms up in a bent position or down in a locked position. And it's—she doesn't relax."

6

[¶11]  On December 12, 2014, the court terminated the parental rights of both parents and determined that it was not in L.D.'s best interest to change her current placement.  Only the father appeals.

## II.  DISCUSSION

[¶12]  The father argues that the court erred in (1) terminating his parental rights to L.D., (2) finding that it was in the best interest of L.D. to remain in her current non-kin placement, and (3) failing to find that DHHS had a duty to investigate known kinship placements and did not perform that duty.  We examine his claims in turn.

A.    Termination of Parental Rights

[¶13]  The court determined by clear and convincing evidence that (1) the father is unable to protect L.D. from jeopardy and that these circumstances are unlikely to change within a time reasonably calculated to meet L.D.'s needs, (2) he is unable to take responsibility for L.D. within a time reasonably calculated to meet her needs, and (3) he failed to make a good faith effort to rehabilitate and reunify with L.D.  The court further found that termination of the father's rights is in L.D.'s best interest.  *See* 22 M.R.S. § 4055(1)(B)(2) (2014).

[¶14]  "We review the court's factual findings for clear error and its ultimate conclusion regarding the best interest of the child for an abuse of discretion, viewing the facts, and the weight to be given them, through the trial court's lens."

*In re R.M.*, 2015 ME 38, ¶ 7, 114 A.3d 212. "Evidence is sufficient to affirm an order terminating parental rights when a review of the entire record demonstrates that the trial court rationally could have found clear and convincing evidence in that record to support the necessary factual findings as to the bases for termination." *In re Marcus S.*, 2007 ME 24, ¶ 6, 916 A.2d 225 (quotation marks omitted).

> [¶15] In its decision, the court concluded that
>
> there is no way to know how [the father] will do once he is outside the structured setting of the Department of Corrections. The last time he was released, he relapsed within months. When he is released in the spring of 2015, he will not be on probation, nor will he have any other formal follow-up. He would need to establish a place to live, a job, and his sobriety before he could take responsibility for [L.D.]. Even if he does very well upon release, he would not be available to [L.D.] until well after her second birthday. This is simply too long for this little girl to wait.

Given the father's pattern of drug abuse and criminal activity, the court rationally could have found, by clear and convincing evidence in the record, that the father is unable to protect L.D. from jeopardy or take responsibility for L.D. within a reasonable time frame. Given the evidence, the court also rationally could have found that the father did not make a good faith effort to reunify and that termination of his parental rights is in L.D.'s best interest.

B.     Father's Request for Kinship Placement

[¶16]  The father argues that (1) the court erred in determining that it is in L.D.'s best interest to remain in her current nonrelative placement, and (2) DHHS has a statutory duty to investigate known kinship placements and it failed to satisfactorily undertake that duty.  DHHS argues that the denial of the father's placement request is not subject to appellate review pursuant to 22 M.R.S. § 4006.

[¶17]  Title 22 M.R.S. § 4006 provides: "Orders entered under this chapter under sections other than section 4035, 4054 or 4071 are interlocutory and are not appealable."  We have said that "[s]ection 4006 unequivocally provides that in child-protective cases orders other than termination orders, jeopardy orders, or orders authorizing medical treatment are not appealable."  *In re L.R.*, 2014 ME 95, ¶ 9, 97 A.3d 602 (quotation marks omitted); *see* 22 M.R.S. §§ 4006, 4035, 4054, 4071 (2014).  Accordingly, because the father's interlocutory appeal is barred by section 4006, it must be dismissed.[5]

The entry is:

> Judgment affirmed as to termination of parental
> rights.  Appeal dismissed in all other respects.

---

[5]  Because placement orders are not appealable, we do not reach the father's arguments that DHHS failed to exercise due diligence to identify and provide notice to all known grandparents and other adult relatives within thirty days after the removal of a child from the custody of a parent or guardian as provided in 22 M.R.S. § 4036-B(3-A) (2014), or that DHHS, having gained custody of L.D., failed to appropriately consider giving preference to an adult relative over a nonrelated caregiver when determining placement for the child as required by 22 M.R.S. § 4062 (2014).

**On the briefs:**

Andrew T. Dawson, Esq., Goodspeed & O'Donnell, Augusta, for appellant Father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Augusta District Court docket number PC-2013-31
FOR CLERK REFERENCE ONLY