MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2016 ME 32
Docket:        Han-15-426
Submitted
 On Briefs:   January 28, 2016
Decided:      February 18, 2016

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.


IN RE DAPHNE


PER CURIAM

[¶1]  The father of Daphne[1] appeals from a judgment of the District Court (Ellsworth, *Mallonee, J.*) terminating his parental rights pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2) (2015).  The father argues that the court impermissibly based its decision terminating his parental rights on his incarceration.  Additionally, the father argues that the Department of Health and Human Services failed to make a meaningful effort at reunifying the father with the child.

[¶2]  Because the court properly considered the length of the father's unavailability due to incarceration in determining whether he is able to take responsibility for the child within a time reasonably calculated to meet the child's particular needs, and because the court was not required to make a separate finding

---

[1]  A pseudonym is used herein to respect the privacy of the child.

regarding the extent of the Department's reunification efforts, so long as it had an adequate basis for its finding of parental unfitness, we affirm the judgment.

## I. CASE HISTORY

[¶3] The court found the following facts by clear and convincing evidence, which are supported by competent record evidence.[2] *See In re M.S.*, 2014 ME 54, ¶ 13, 90 A.3d 443. The father is incarcerated. His earliest possible date of release is in October 2016, approximately fifteen months after the court's July 2015 hearing. Addressing the father's incarceration, the court found: "In prison, [the father] has taken classes and participated in services to overcome his own problems—in particular his substance abuse—and to develop skill and insight as a parent." The father "presented himself in court as thoughtful and realistic. He loves his daughter, wants what is best for her, and is willing to work to provide it."

[¶4] The child's play therapist opined that the child's play therapy indicates that she "has suffered some form of trauma in her life,"[3] and she "has a particular, immediate need for stability and permanency." The therapist further recommended that "to maintain her in long-term foster care would be harmful to her." The child

---

[2] We note that the court's findings are unusually brief, albeit sufficient to satisfy the requirements of M.R. Civ. P. 52(a). *See In re Jazmine L.*, 2004 ME 125, ¶ 13, 861 A.2d 1277. Although we respect the court's efficiency, more detailed findings would have better advised the parties and our appellate review of the basis for the court's decision.

[3] The court made no finding, and the record contains no evidence, as to the specific nature of the trauma.

is in a pre-adoptive foster placement, with foster parents who "are able to provide for all of [the child]'s needs, particularly those implicated by events in [the child]'s play therapy sessions."

[¶5]  The father's brief on appeal argues that "[p]rior to the Department's involvement" he was "a typical devoted, full-time parent raising his child in a loving home."  The Department's involvement in the child's life began in July 2013.  At that time, the child, then a little over a year old, was hospitalized after she ingested a strip of Suboxone[4] while in her father's care.  The father was prescribed Suboxone at the time.  Neither of the child's parents could provide any explanation for how their child could have accessed or been given the Suboxone.[5]

[¶6]  Shortly after the child ingested the Suboxone, the father was removed from the home pursuant to a Department safety plan.  About two months later, the father was arrested for drug trafficking and operating after license revocation.  He remained incarcerated throughout the proceedings.

---

[4]  Suboxone is a prescription drug used to treat drug addiction by opiate replacement therapy. Individual doses of Suboxone are administered orally, often in the form of dissolving strips.

[5]  The Department also brought termination proceedings against the child's mother.  The mother consented to termination of her parental rights, conditional on termination of the father's rights, at the July 2015 hearing.

## II. LEGAL ANALYSIS

[¶7]   We review the court's factual findings for clear error, evaluated pursuant to the clear and convincing evidence standard of proof. *In re R.M.,* 2015 ME 38, ¶ 7, 114 A.3d 212.

A.   The Father's Incarceration

[¶8]   A court may not terminate parental rights based solely on a parent's incarceration. *In re Cody T.,* 2009 ME 95, ¶ 28, 979 A.2d 81. "In considering the parental fitness of an incarcerated parent, the court's focus is not on the usual parental responsibility for physical care and support of a child, but upon the parent's responsibility or capacity to provide a nurturing parental relationship using the means available." *Id.*

[¶9]   This rule does not suggest that incarcerated parents be treated differently than other parents who may be unavailable, for any reason, to care for their child, and it does not bar incarcerated parents from having their parental rights terminated or preclude a court from considering the realities of a parent's incarceration.  *See In re Randy Scott B.,* 511 A.2d 450, 455 (Me. 1986). Respecting the strong policies in favor of permanency and against children remaining in long-term foster care, *see* 22 M.R.S. § 4003 (2015); *In re Thomas H.,* 2005 ME 123, ¶¶ 23-24, 889 A.2d 297, a court may consider, in light of the child's particular needs, whether the length of a parent's incarceration will prevent the

parent from (1) protecting the child from jeopardy, or (2) taking responsibility for the child, within a time reasonably calculated to meet the child's needs, *see* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii) (2015); *In re L.D.*, 2015 ME 123, ¶ 15, 123 A.3d 990; *In re Randy Scott B.*, 511 A.2d at 455; *In re Daniel C.*, 480 A.2d 766, 769 (Me. 1984).

[¶10]  Here, the court, while recognizing the father's efforts to rehabilitate and improve his parenting skills, found that the length of the father's incarceration rendered him incapable of taking responsibility for the child within a time reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(ii).  The court based this finding on the child's particular need for immediate permanency, crediting testimony from the child's therapist, and acknowledging that the father's earliest possible release date was fourteen months after entry of the court's judgment terminating his parental rights.  These findings are supported by competent record evidence, and we discern no error in the court's findings.

B.    The Department's Reunification Efforts

[¶11]  The Department is required to produce a reunification plan that identifies "the problems that present a risk of harm to the child" and "the services needed to address those problems," 22 M.R.S. § 4041(1-A)(A)(1)(a) (2015), and to "[m]ake good faith efforts to cooperate with the parent in the pursuit of the plan,"

22 M.R.S. § 4041(1-A)(A)(3) (2015). Here, the Department presented evidence about a caseworker's efforts to develop a rehabilitation and reunification plan, but the father's incarceration and his uncertainty about whether the child should be brought to the corrections facility to visit him limited reunification efforts.

[¶12] "The Department's compliance with its rehabilitation and reunification duties as outlined in section 4041 does not constitute a discrete element requiring proof in termination proceedings, nor does the failure of the Department to comply with section 4041 preclude findings of parental unfitness." *In re Doris G.*, 2006 ME 142, ¶ 17, 912 A.2d 572. Instead, "the court *may* consider the lack of reunification efforts as one factor in evaluating the parent's conduct for unfitness." *Id.* ¶ 16 (emphasis in original).

[¶13] The court did not, and was not required to, address the extent of the Department's efforts to engage in reunification in its finding that the father is unfit. *See id.* Contrary to the father's assertions, competent record evidence supports the court's findings, by clear and convincing evidence, of at least one ground of parental unfitness and that termination is in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2); *In re R.M.*, 2015 ME 38, ¶ 7, 114 A.3d 212.

The entry is:

Judgment affirmed.

**On the briefs:**

Dawn M. Corbett, Esq., Law Office of Dawn M. Corbett, PA, Ellsworth, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Ellsworth District Court docket number PC-2013-49
FOR CLERK REFERENCE ONLY