MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2018 ME 4
Docket:       Ken-17-308
Submitted
  On Briefs:  January 11, 2018
Decided:      January 23, 2018

Panel:        ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE AURORA M. et al.


PER CURIAM

[¶1] The father of Aurora M. and Juelz M. appeals from a judgment of the District Court (Augusta, *E. Walker, J.*) terminating his parental rights to the children pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i)-(iv) (2017).[1] He contends that the guardian ad litem failed to satisfy his statutory obligations to conduct an in-person interview with the father and to notify the father's attorney that the father was incarcerated before the cease reunification order went into effect.[2] *See* 4 M.R.S. § 1554 (2017);[3] 22 M.R.S. § 4005(1) (2017). We disagree and affirm the judgment.

---

[1] The District Court (Augusta, *J. French, J.*) entered a judgment terminating the mother's parental rights to the children after the mother consented to termination. *See* 22 M.R.S. § 4055(1)(A)(1)(a), (B)(1) (2017). The mother does not appeal from that judgment.

[2] Counsel for the father filed an appellate brief containing only a procedural history and statement of facts, accompanied by a motion for enlargement of time to allow the father to personally file a supplemental brief. Counsel stated in his motion that he was unable to find any arguable issues on appeal. We granted the motion to allow the father to personally file a brief, which he did. *See In re M.C.*, 2014 ME 128, ¶¶ 6-7, 104 A.3d 139; *In re William P.*, 2001 ME 25, 765 A.2d 76.

## I. CASE HISTORY

[¶2]   The court found by clear and convincing evidence the following facts, which are supported by competent evidence in the record.  *See In re Hannah S.*, 2016 ME 32, ¶ 3, 133 A.3d 590.

[¶3]   The father was the primary caregiver of the children before the Department took custody of the children in January 2016.  He has a lengthy history of illegal drug use.  When the children were in his care, he injected heroin at least four times a day and spent money on drugs instead of on basic necessities for the children.  The Department offered to provide the father with a substance abuse evaluation and counseling, but he refused to participate, stating that he needed more serious in-patient treatment.  He also blames his inability to pay even minimal fees and his lack of transportation for his inability to attend counseling.

[¶4]   The father has a lengthy criminal history and is currently in a maximum-security facility after assaulting another inmate with a padlock while in a minimum-security facility.  He is expected to be released sometime during the summer of 2018.  The father has a history of domestic violence

---

[3]   The Legislature repealed the sunset provision for this statute.  *See* P.L. 2017, ch. 138, § 1 (emergency effective June 7, 2017) (repealing 4 M.R.S. § 1558, which had provided, "This chapter is repealed October 1, 2017.").

against the children's mother, with many of the incidents being witnessed by both children. This has caused significant psychological damage to the children, who openly fear him; Aurora suffers from severe post-traumatic stress disorder as a result of witnessing the violence. The father shows no understanding of the serious damage his abuse and neglect have caused his children and has no realistic plan for caring for them in the future.

[¶5] The father has done almost nothing to reunify with his two children. He has had minimal contact with his attorney, his probation officer, the Department, and the court since the children were removed and has never inquired about visitation or even how the children are doing. The father has failed to appear for court, and he has failed to notify the Department of his whereabouts and to notify his probation officer of address changes. The court stated that it "understands that recovery is not a sprint, but is, instead, a marathon. The problem is that Father still hasn't even approached the starting line in this race." The children need a permanent home now and cannot wait for the father to get his life in order.

## II. LEGAL ANALYSIS

[¶6] "We review the court's factual findings for clear error, evaluated pursuant to the clear and convincing evidence standard of proof." *In re Hannah S.*, 2016 ME 32, ¶ 7, 133 A.3d 590.

### A. Interview with Parent

[¶7] The father asserts that the guardian ad litem failed to conduct a face-to-face interview with him to discuss the children's needs and the reunification plan, which the father alleges was a violation of the guardian ad litem's statutory obligations. The father does not assert that he was prejudiced by the alleged failure.

[¶8] In child protection matters, the guardian ad litem, acting as the court's agent, "shall act in pursuit of the best interests of the child[ren]." 22 M.R.S. § 4005(1)(B), (G). To fulfill this duty, the guardian ad litem must conduct an investigation "to ascertain the facts." *Id.* § 4005(1)(B). The investigation must include, "when possible and appropriate," an interview with the parents. *Id.* § 4005(1)(B)(5). Section 4005 does not specify the manner or method by which any interview with the parents is to be conducted. *Cf. id.* § 4005(1)(B) (requiring the guardian ad litem to have face-to-face contact with the children in the children's home within seven

days of appointment by the court and at least once every three months thereafter or on a schedule established by the court).

[¶9]  The court did not, and was not required to, address the extent of the guardian ad litem's efforts to interview the father.  The court found, however, that the father did not maintain contact with his attorney, his probation officer, the Department, or the court; that the father failed to notify the Department of his whereabouts and changed his address without notifying his probation officer; and that the father failed to appear for court proceedings.  Furthermore, the court found that the father had a history of incarceration and that, at the time of the termination hearing, the father was serving a nineteen-month sentence for a probation violation and had been transferred from a minimum-security facility to a maximum-security facility after assaulting another inmate.  Under these circumstances, an interview with the father may not have been "possible and appropriate."[4]  *Id.*

[¶10]  Moreover, the guardian ad litem's compliance with section 4005 does not constitute a discrete element requiring proof in a parental rights termination hearing.  *Cf. In re Hannah S.*, 2016 ME 32, ¶ 12, 133 A.3d 590 (holding that the Department's satisfaction of its statutory obligations is not a

---

[4]  The court found, based on competent evidence in the record, that the father and the guardian ad litem both participated in a September 2016 family team meeting.

6

discrete element of proof that must be met for termination to occur); *In re Doris G.*, 2006 ME 142, ¶ 17, 912 A.2d 572 (same).

B.     Notification of Incarceration

[¶11]  The father also contends, based on his personal belief, that the guardian ad litem was aware that the father had become incarcerated in June 2016 while the order to cease reunification efforts was pending and that the guardian ad litem failed to notify the father's counsel of the father's incarceration in violation of his duties as a guardian ad litem.  The father contends that if the guardian ad litem had notified his attorney, then his attorney would have contacted him in jail, and his attorney would have contacted the Department to prevent the cease reunification order from going into effect.  The father's argument fails for several reasons.

[¶12]   First, the father's assertion is based on an erroneous understanding of the historical facts.  On May 16, 2016, the father failed to appear for the jeopardy hearing after having been provided due notice.  The court (*Fowle, J.*) held a contested hearing in the father's absence and entered an order finding jeopardy as to the father.  The court additionally found that the father's compliance with the case plan had been "unacceptable" and that the father had failed to meet with the Department.  The court issued an order:

"[The father] shall have thirty days to engage in reunification services through the Department. If he fails to do so, a cease reunification order will enter on 6/16/16."

[¶13]  On June 8, 2016, the father was arrested for unlawful possession of scheduled drugs (Class C), 17-A M.R.S. § 1107-A(1)(B)(1) (2017).  He was not released on bail until June 20, by which time the cease reunification order had been entered.  Three days after the father was released on bail, on June 23, he was arrested for violation of condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2017), and was held without bail.  On June 30, the guardian ad litem from this child protection matter was appointed to represent the father in the criminal matter.  Recognizing the conflict of interest, the guardian ad litem immediately and appropriately filed a motion to withdraw in the criminal matter, and another attorney was appointed to handle the father's criminal case.  Thus, the guardian ad litem was not aware of the father's incarceration status during the thirty-day period when the cease reunification order was pending, and, therefore, could not have known to notify the father's attorney, assuming *arguendo* that he had an obligation to make such a notification.  Contrary to the father's assertion, the evidence in

the record establishes that the guardian ad litem acted in good faith in carrying out his duties.

[¶14] Second, although the guardian ad litem has a statutory duty to act in the best interests of the children—which includes effectively communicating with all parties, maintaining the highest standards of professionalism, and recognizing that timely resolution serves the best interests of the children and their need for stability—sections 1554 and 4005 do not impose an express obligation on a guardian ad litem to immediately notify a parent's counsel in a child protection matter that the parent has become incarcerated.

[¶15] Third, there is no evidence in the record indicating that the father was prevented from contacting, or was unable to contact, his attorney or the Department on his own. There is ample record evidence, however, that the father did not maintain contact with the other parties involved in these proceedings and did not make his whereabouts known when he was not incarcerated. Furthermore, the court (*E. Walker, J.*) found that the father "ha[d] done virtually nothing to reunify with his two children." Given that the father failed to participate in services from the time the case began in January 2016 to the termination of his parental rights in June 2017, we are not

persuaded by the father's argument that, but for the guardian ad litem's alleged failure to notify his attorney of his incarceration status in June 2016, he would have contacted the Department to engage in reunification services.

C.     Sufficiency of the Evidence

[¶16]   Further, although not challenged by the father on appeal, the court's findings that father is unfit and that termination is in the children's best interests does not reflect any error or abuse of discretion.  *See* 22 M.R.S. § 4055(1)(B)(2); *In re Aubrey R.*, 2017 ME 37, ¶ 8, 157 A.3d 212.

The entry is:

Judgment affirmed.

---

Douglas F. Jennings, Esq., Walker & Jennings, PA, Hallowell, and the father personally, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Augusta District Court docket number PC-2016-01
FOR CLERK REFERENCE ONLY