MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 4
Docket:      Cum-18-202
Submitted
  On Briefs:  November 28, 2018
Decided:     January 10, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILDREN OF COREY W.


PER CURIAM

[¶1]  The mother and father appeal from a judgment of the District Court (Bridgton, *Darvin, J.*) terminating their parental rights to two of their children.[1] The father asserts that the Department of Health and Human Services' placement of the children with a kinship foster family in Florida frustrated his ability to reunify with them, rendering the Department's reunification plan noncompliant with the requirements prescribed in 22 M.R.S. § 4041(1-A)(A)(1) (2017).  He further contends that the court erred by approving the children's out-of-state placement in its order after judicial review.  The mother challenges the sufficiency of the evidence underlying the court's determination that she is

---

[1] The parents have a third child, who lives with another family, and the mother also has an older child, who resides with the child's maternal grandparents.  Neither of these other children is a subject of this child protection action.  References in this opinion to the two children mean the children as to whom the parents' rights have been terminated.

2

parentally unfit within the meaning of 22 M.R.S. § 4055(1)(B)(2)(b)(ii)-(iv) (2017).  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The following facts are drawn from the court's findings, which are supported by the evidence, and from the procedural record.[2]  *See In re Evelyn A.*, 2017 ME 182, ¶ 4, 169 A.3d 914.

[¶3]  In October of 2016, the Department filed petitions for child protection and preliminary protection orders concerning the two children at issue here.  *See supra* n.1.  The court (*Dow, J.*) issued a preliminary protection order at that time, granting custody of the children to the Department, which placed them with their maternal grandparents.  In February of 2017, while both parents were incarcerated,[3] the court (*Darvin, J.*) issued an agreed-upon jeopardy order as to each parent.  The jeopardy findings included each parent's untreated mental health problems, longstanding addiction and substance

---

[2]  The record includes the court's earlier order after a contested judicial review hearing.  *See* 22 M.R.S. § 4038 (2017).  In the termination judgment, the court incorporated by reference the findings of fact set forth in the judicial review order.  Because the record does not include a transcript of the judicial review hearing or an acceptable substitute for a transcript, *see* M.R. App. P. 5(a), (b)(2)(A), (d), "we will assume that the transcript would support the trial court's findings of fact and its rulings on evidence and procedure."  *Greaton v. Greaton*, 2012 ME 17, ¶ 2, 36 A.3d 913.

[3]  The mother was incarcerated from December of 2016 until her release in April of 2018, twenty days prior to the termination hearing.  The father was already incarcerated when the children were placed in the Department's custody.  After he was released and then rearrested in November of 2016, he was finally released in February of 2017 into an inpatient substance abuse rehabilitation program.

abuse issues, significant criminal histories, and failure to protect the children from unsafe people and provide the children with a safe and secure home.

[¶4] In late 2016, the children's grandparents determined that they could not meet the older child's high level of specialized needs and requested that the Department find an alternative placement for both children. The Department was unsuccessful in locating a suitable therapeutic foster placement in Maine where the children could be placed together. The following April, the children were placed in the home of the father's cousin and her wife in Florida, both of whom were already licensed foster care parents.

[¶5] At the time the children were placed in Florida, the father had been released from jail, *see supra* n.3, completed an inpatient substance abuse program, and moved into a sober house. Asserting that the children's geographic separation from him would be a barrier to reunification, in May of 2017 the father filed a motion for the court to hold an expedited judicial review hearing where he could challenge the children's out-of-state placement.[4] *See* 22 M.R.S. § 4038(2) (2017). The court granted the request and, after holding a

---

[4] The mother also objected to the children's placement in Florida but, due to her incarceration and uncertain release date, she was not in a position to pursue reunification at that time.

4

judicial review hearing in September of 2017,[5] issued an order that allowed the children's placement in Florida to continue "on a temporary basis." Along with other requirements outlined in the Department's rehabilitation and reunification plan, the court ordered the father to complete "specific and targeted tasks to address the major outstanding concerns." These tasks included contacting the older child's treatment professionals and completing Department-recommended parenting courses. The court explained that "[b]y completing the required tasks and complying with the terms of this order[, the] father should be able to demonstrate a clear path toward reunification." The court also provided for contact between the father and the younger child, including "telephone and Internet based visitation . . . at least twice a week," and in-person contact in Florida to be arranged and paid for by the Department. The court stated that at the next judicial review hearing it would consider whether placement of the younger child, who did not face the significant challenges presented by the older child, should be moved to Maine.

[¶6] In February of 2018, the Department filed a petition to terminate the parental rights of both parents, and in April, shortly after the mother was

---

[5] The court attempted to hold the judicial review hearing on an expedited basis, but for reasons that are not clear from the record, the hearing was rescheduled several times and not held until the fall of 2017.

released from federal prison, *see supra* n.3, the court held a two-day hearing on the petition. The following month, the court entered a judgment terminating the parental rights of each parent. Based on clear and convincing evidence in the record, the court determined that each parent was unable to take responsibility for the children and had failed to make a good faith effort to rehabilitate and to reunify with the children, and that these circumstances were unlikely to change within a time reasonably calculated to meet the children's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(ii), (iv). The court also concluded that the mother had abandoned both children by failing to communicate meaningfully with the children and their foster parents and providers during the preceding year, and that the father had abandoned the older child by failing to engage and communicate with him. *See id.* § 4055(1)(B)(2)(b)(iii). Finally, the court concluded that termination of the parents' parental rights is in the children's best interests. *See* 22 M.R.S. § 4055(1)(B)(2)(a) (2017).

[¶7] In support of those determinations, the court made the following findings of fact, all of which are supported by competent record evidence.

> The [older child] is now 4 ½ years old. As of the hearing date he had been in DHHS custody for more than 18 months and one third of his life. . . . [The older child] has been receiving regular therapeutic counseling and special education services for more than one year in Florida. . . . [H]is behavior this past year noticeably worsened or regressed immediately following his previous

communication or contact with his father . . . . In general, [the older child's] behavior has improved . . . following the cessation of direct communication with his father authorized by the 9/26/17 judicial review order. [He] . . . expresses considerable distress at the thought of returning to Maine. As of the hearing date [the older child] had not had any contact or communication with his father since July 2017 (when telephone/Skype communication was terminated) and has not seen his father in person since sometime in March 2017. . . .

[The younger child] was a little more than 9 months old when this case was commenced and she is now almost 2 ½ years old. . . . [T]here were numerous telephone communications [between the father and the younger child] that did not take place as scheduled due to father's failure to follow through or abide by reasonable contact guidelines. . . . [T]he level of attachment and interest between father and daughter appears minimal. . . . [The younger child] has been given a formal [mental health] diagnosis . . . .

. . . .

The mother . . . must remain in the sober house for at least the next few months before she may be permitted to look for other housing. . . . She is at the early stages of creating a life and support system outside of jail that hopefully will allow her to sustain her sobriety and independent living. As of the hearing date [the mother] had not had any in person contact with either child in more than 16 months and had only brief telephone communication with [the older child] during a few telephone calls prior to April 2017. Throughout her lengthy incarceration, she has not sought out any information from . . . the provider of any services for either child or communicated with them. . . .

[The father] has demonstrated through his participation in programming and behavior that he has achieved and maintained sobriety over a sustained period of time. . . . Since October 2017 [the father] has made significant efforts to complete the parenting education programming required by the DHHS reunification plan . . . but was not able to complete all of the programs. . . . [The father]

has not moved on to independent living in order to be able to demonstrate that he can provide suitable and stable housing for the children . . . .

. . . .

. . . [The father] has failed to demonstrate any meaningful progress in understanding the needs of his children, and most particularly [the older child]. [The father] has communicated only a few times with any of [the older child's] providers or teachers, including single calls with the child's neurologist, physician and former therapist. Most significantly, he failed to follow through or take advantage of the suggestion by [the older child's] counselor in January 2018 that he write a letter to send to [the older child] that could be shared with [him] in counseling as a means of building a bridge towards resumption of contact between father and child. . . . [The father's] concern that the letter would be negatively received by [the child] . . . is no excuse for his failure to take a critical step forward in repairing his relationship with his son. . . .

[The father and mother] continue to maintain that except for their chronic drug use and their periods of incarceration, they otherwise cared for and properly parented their children, and in particular [the older child]. . . . The court finds each parent's recollection of [the older child's] earlier childhood experiences and their parenting abilities to be particularly unreliable and not credible. More importantly, their inadequate efforts to properly reach out and seek all available information and knowledge about [the older child's] current needs and treatment services [have] resulted in their fundamental lack of insight and failure to understand their son's profound needs. [The older child] is at great risk of regression and further harm if placed in the care of either parent at this time and he is suffering from the weight of uncertainty about his future. . . . [T]he child's present needs demand certainty, stability and permanency without any further delay.

. . . Both parents have whitewashed their prior failures to properly parent and care for both children by attributing all problems to their substance abuse without proper recognition of their parenting deficits and the harm caused to their children. . . .

. . . [The father] describes a life now that requires him to engage in regular activities that focus on his own needs in order to support and maintain his sobriety.  His lifestyle as described in his testimony leaves little time for the demands of active parenting, particularly with the high-level needs of his son . . . .

. . . .

. . . Despite taking several required parenting courses [the father] failed in his testimony to demonstrate that he actually had learned anything about being a parent or would do anything different (other than not using illegal substances) as a parent in the future. . . .

(Footnote omitted.)

[¶8]  Following the issuance of the judgment terminating their parental rights, the parents filed timely appeals.[6]  *See* 22 M.R.S. § 4006 (2017); M.R. App. P. 2B(c)(1).

---

[6] Prior to filing her appeal, the mother filed a motion with the court for additional findings of fact, *see* M.R. Civ. P. 52(b), and to reconsider or amend the judgment, *see* M.R. Civ. P. 59(e).  The court granted the motion in part, amending the language in the termination order and making additional findings, and denied all other relief sought by the mother.  The amended language and the additional findings related to the marginal amount of communication between the mother and the children and their foster parents, which is reflected in the quoted portion of the court's termination order included in this opinion.

## II. DISCUSSION

[¶9] The parents challenge the judgment terminating their parental rights on differing grounds. The father contends that, by placing the children where he could have only limited contact with them, the Department's reunification plan failed to satisfy the statutory requirements, *see* 22 M.R.S. § 4041(1-A)(A)(1), and that the court erred by approving the children's out-of-state placement in its order after judicial review. The mother asserts that the evidence is insufficient to support the court's determination of her parental unfitness. *See id.* § 4055(1)(B)(2)(b)(ii)-(iv). We address these contentions in turn.

A. The Reunification Plan for the Father

[¶10] The father contends that, due to the placement of the children in Florida, the Department's reunification plan—which he describes as consisting of "phone contact" and "occasional visits"—did not meet the requirements of 22 M.R.S. § 4041(1-A)(A)(1).[7] He further asserts that, in the judicial review

---

[7] In pertinent part, 22 M.R.S. § 4041(1-A)(A)(1)(c) (2017) mandates that the Department include in the rehabilitation and reunification plan:

    (ii) The changes that are necessary to eliminate jeopardy to the child while in the care of a parent;

    (iii) Rehabilitation services that will be provided and must be completed satisfactorily prior to the child's returning home;

order issued in September of 2017, the court erred by "condition[ing the] return of the children to [a foster placement] in Maine on a showing of [the father's] parental fitness." These deficiencies, he argues, require us to vacate the order terminating his parental rights to each child.

[¶11] The nature of these contentions leads to two observations about how they might bear on this appeal from a termination judgment.

[¶12] First, to the extent that the father directly challenges the judicial review order containing the court's limited ratification of the Department's decision to place the children in foster care in Florida, his contention is not cognizable on appeal. An order after judicial review, which is governed by 22 M.R.S. § 4038 (2017), is deemed interlocutory by operation of statute and

(iv)  Services that must be provided or made available to assist the parent in rehabilitating and reunifying with the child, as appropriate to the child and family, including, but not limited to, reasonable transportation for the parent for visits and services, child care, housing assistance, assistance with transportation to and from required services and other services that support reunification;

(v)  A schedule of and conditions for visits between the child and the parent designed to provide the parent and child time together in settings that provide as positive a parent-child interaction as can practicably be achieved while ensuring the emotional and physical well-being of the child when visits are not detrimental to the child's best interests;

(vi)  Any use of kinship support, including, but not limited to, placement, supervision of visitation, in-home support or respite care; [and]

(vii)  A reasonable time schedule for proposed reunification, reasonably calculated to meet the child's needs.

therefore cannot be appealed. *See id.* § 4006 ("Orders entered under this chapter under sections other than 4035 [jeopardy orders], 4054 [termination orders] or 4071 [medical treatment orders] are interlocutory and are not appealable."); *cf. In re Children of Nicole M.*, 2018 ME 75, ¶ 11, 187 A.3d 1 (holding that "a permanency plan order is treated by operation of statute as an interlocutory order and is therefore not itself appealable"); *In re L.D.*, 2015 ME 123, ¶¶ 16-17, 123 A.3d 990 (holding that the court's child placement order is statutorily interlocutory and not appealable). Instead, we may consider the father's challenge to the children's continued placement in Florida, as ordered by the court after judicial review, only as that issue bears on the court's later determination that he is parentally unfit. *Cf. In re Children of Nicole M.*, 2018 ME 75, ¶ 11, 187 A.3d 1 (stating that an appeal of a termination order "cannot be used as a vehicle to directly challenge" a permanency plan order, but instead may be considered in the context of the court's best interest analysis pertaining to termination).

[¶13]   Second, although the Department is statutorily obligated to develop a rehabilitation and reunification plan, *see* 22 M.R.S. § 4041(1-A)(A)(1), the "failure to satisfy [this] obligation[] does not preclude a termination of parental rights," *In re Doris G.*, 2006 ME 142, ¶ 16, 912 A.2d 572, and a

deficiency in the plan or its implementation may be considered by the court only as a *factor* in its parental unfitness analysis, *see In re Hannah S.*, 2016 ME 32, ¶ 12, 133 A.3d 590. Moreover, the court "is not required to address the extent of the Department's reunification efforts in its finding that [the parent] is unfit" if competent record evidence supports the court's finding of at least one ground of parental unfitness by clear and convincing evidence. *In re Emma S.*, 2018 ME 8, ¶ 5, 177 A.3d 632. Therefore, even if evidence shows that the Department did not fulfill its statutory duty to develop a proper rehabilitation and reunification plan, such a failure is not dispositive of a termination petition.

[¶14] We therefore must consider the father's assertions only in the context of the court's conclusion that the father is parentally unfit, and we look to the record as a whole to determine if it supports the court's conclusion. "We review for clear error the court's findings of fact on parental unfitness." *In re Child of James R.*, 2018 ME 50, ¶ 11, 182 A.3d 1252.

[¶15] Competent record evidence supports the court's determination that the father was unfit to parent the older child for reasons unrelated to the children's foster placement in Florida. The court found, for example, that despite clear instructions from both the court and the Department that he contact the older child's treatment professionals, who represent a variety of

disciplines, on a specific schedule, the father did not do so. Nor did the father complete the parenting education classes recommended by the Department or timely follow the recommendation of the child's therapist to write a letter to the child as a way to begin repairing their damaged relationship. And although each rehabilitation and reunification plan required him to provide safe and stable housing for the children, at the time of the hearing the father chose not to live in a place that was suitable for the children, but rather continued to reside in a sober house that the Department had deemed inappropriate for reunification.

[¶16] The prevailing theme of these aspects of the father's unfitness is, as the court found, his "fail[ure] to demonstrate any meaningful progress in understanding the needs of his children, and most particularly" those of the older child, whose needs are profound. The father could have satisfied each of these requirements, along with others, no matter the child's location, in order to rehabilitate and reunify. That he failed to do so supports the court's determination that he is statutorily unfit to be a parent to the older child. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(ii)-(iv).

[¶17] Likewise, the court's determination of the father's parental unfitness with regard to the younger child—also for reasons unrelated to that

child's placement in Florida—is supported by competent evidence in the record.  In addition to finding that the father had failed to provide safe and stable housing and complete the required parenting courses, the court found, based on clear and convincing evidence, that the father had not taken full advantage of the opportunities that *were* available for contact, even if those opportunities might have been more limited than if he had been in closer geographical proximity to the child.  Moreover, with considerable support in the record, the court found that the father's "inability to recognize [his] parenting deficits creates a substantial risk of harm to . . . [the younger child]." Thus, the court did not err by determining that the father was unfit to parent the younger child pursuant to 22 M.R.S. § 4055(1)(B)(2)(b)(ii), (iv).

B.      The Mother's Parental Unfitness

[¶18]  The mother challenges the sufficiency of the evidence supporting the court's determination of parental unfitness on three statutory bases.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(ii)-(iv).  She focuses principally on evidence that she had "participated in all of the services offered" during her sixteen-month period of incarceration and, following her release, had taken "all possible steps" to address the Department's requirements for reunification.

[¶19] "Where the court finds multiple bases for unfitness, we will affirm if any one of the alternative bases is supported by clear and convincing evidence." *In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260.

[¶20] Although the court recognized that the mother had participated in therapeutic programming during her incarceration, the court found that she had only recently been released from prison, that the conditions of her federal probation required her to live in a sober house for up to five months,[8] and that she must "first develop a support structure that will sustain her sobriety in the future." As the court found with respect to the father, the court also found that the mother had not made material progress in understanding the children's needs, particularly those of the older child, and that she had "whitewashed" her fundamental parenting deficiencies and showed no insight into the effect of those deficits on both children. Given these supported findings and the court's determination that "[e]ach child's present need for certainty simply cannot wait for her to develop and demonstrate her future capacity to parent," the court did not err by concluding that the mother was unwilling or unable to take

---

[8] The terms of the mother's federal probation required her to reside in a sober house for 160 days following her release from prison. The Department determined that the sober house does not constitute safe and stable housing.

responsibility for the children within a time reasonably calculated to meet the children's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(ii).

[¶21] Because the court's determination of this ground of parental unfitness by clear and convincing evidence is supported by competent record evidence, we need not address the mother's challenges to the two other types of parental unfitness found by the court. *See In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260.

The entry is:

Judgment affirmed.

---

Charlene Hoffman, Esq., Portland, for appellant Father

Thomas L. Richard, Esq., Rioux, Donahue, Chmelecki & Peltier, LLC, Portland, for appellant Mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Bridgton District Court docket number PC-2016-14
FOR CLERK REFERENCE ONLY