MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2020 ME 16
Docket:        Ken-19-346
Submitted
  On Briefs:  January 23, 2020
Decided:       January 30, 2020

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

# IN RE CHILD OF NICHOLAS W.

PER CURIAM

[¶1]  Nicholas W., the father, and Tiffany W., the mother, appeal from a judgment of the District Court (Augusta, *E. Walker, J.*) terminating their parental rights to their child.  Both parents challenge (1) the sufficiency of the evidence supporting the court's findings of their parental unfitness, (2) the court's determination that the termination of their parental rights was in the child's best interest, and (3) the sufficiency of the rehabilitation and reunification efforts made by the Department of Health and Human Services.  The mother additionally argues that the court abused its discretion by admitting out-of-court statements made by the child.  We affirm the judgment.

[¶2]  This matter began when the Department filed a petition for a child protection order and a preliminary protection order for the child in July 2018.  *See* 22 M.R.S. §§ 4032, 4034 (2018).  The petition alleged that the child was at risk due to ongoing domestic violence between the parents and the mother's

2

untreated mental health issues, and noted that the Department had been involved with the parents for similar reasons in the past. The court (*Nale, J.*) granted the Department's request for a preliminary protection order the same day it was filed and placed the child in the Department's custody. *See id.* § 4034(2). The parents later waived the opportunity for a summary preliminary hearing. *See id.* § 4034(4).

[¶3] In September 2018, the court (*E. Walker, J.*) entered an agreed-to jeopardy order as to both parents, *see* 22 M.R.S. § 4035 (2018), based on the threat of physical and emotional harm to the child as well as the volatile domestic situation between the parents. In February 2019, the Department petitioned to terminate both parents' parental rights, *see* 22 M.R.S. § 4052 (2018), and in July 2019 the court held a two-day contested hearing on the termination petition. In August 2019, the court entered a judgment granting the termination petition as to both parents.

[¶4] In its judgment, the court found the following facts by clear and convincing evidence. The mother has significant mental health issues that have gone largely untreated. In addition to having pleaded guilty to multiple domestic violence crimes with the father as the victim, the mother has violated the conditions of her bail and/or probation multiple times. The child has

witnessed the domestic violence between her parents and it scared her. The mother has previously instructed the child to lie to Department officials about witnessing any violence.  Upon her most recent arrest in February 2019, the mother spent five months incarcerated, but spent two of those months at a psychiatric facility.

[¶5]  The court went on to find,

> When the Department took custody of [the child] on July 3, 2018, both parents had already subjected [the child] to a long history of domestic violence and instability.  [The child] had grown up in a family with very few rules and little accountability.
>
> . . . .
>
> Mother's visits with [the child] have been suspended repeatedly because Mother made inappropriate comments to [the child] about coming to kidnap [the child] from the foster placement. Instead of improving her situation and proving that she is ready to protect and safely raise [the child], Mother's position has gotten much worse.  Mother now denies ever assaulting or threatening Father in spite of pleading guilty to numerous crimes and overwhelming evidence to the contrary.   Mother has no understanding of how to safely parent or protect [the child] and is in complete denial of her own mental health problems.  Mother has completely failed to reunify with [the child] and [the child] has simply given up on Mother.
>
> Although a court may not terminate parental rights based solely on a parent's incarceration, . . . in the present case, Mother was released from incarceration numerous times and afforded the opportunity to reunify with the [the child].  Mother chose not to successfully engage in visits and services and made the bad

decision to violate her bail and probation, making her unavailable to be there for her child.

Father, having been the victim of numerous assault[s] and threats by Mother over the years, also shows no real understanding about how his conduct and his warped loyalty to Mother impacts [the child]. Father has been offered domestic violence victim services through DHHS and the Family Violence Project, but he has failed to successfully engage. Father's number one loyalty is to Mother and he has made it clear he will not leave her, no matter what. Father's denial of his family's situation has placed and continues to place [the child] in real jeopardy: physically, mentally, and emotionally. [The child] would have loved to remain with Father if he could have lived apart from Mother, but he has refused to do so. As a result, Father has demonstrated that he is unwilling or unable to protect [the child] from jeopardy or take responsibility for [the child] and these circumstances are unlikely to change within a time which is reasonably calculated to meet the needs of [the child]. The court is satisfied with the reasonable efforts by DHHS to reunify this broken family.

. . . .

[The child] deserves permanency now, and she is unable to wait for her parents to someday possibly demonstrate their stability and to solidify a parental relationship. Mother and Father's opportunity to reunify with [the child] was during the course of the child protection case. Mother did not participate in reunification, even when not incarcerated, and missed her opportunity. Father refused or is unable to acknowledge the danger that Mother poses to himself and [the child]. While Father did well in visiting with [the child] in the last year, he has done very little to help [alleviate] the danger of domestic violence in the family. The court finds that it is in [the child's] best interest to grant the Department's Petition for Termination of Parental Rights in order to free her for adoption.

The difficulty for Mother and Father is one of timing. [The child] is now 13 years old and simply cannot continue to wait for her parents to do all the things necessary to set up a stable, consistent and safe life. [The child] has established a good bond with [her] foster parents and this stability is very important to her. [The child] needs a permanent home now and cannot wait any longer for Mother and Father to get their lives in order. This is a particularly troubling case because it is clear to this court that Mother and Father love [the child] but they have done virtually nothing to effectively reunify with [the child] or change their ways.

The court understands that recovery is not a sprint but is, instead, a marathon. The problem is that Mother and Father still haven't even approached the starting line in this race. What quickly becomes apparent, when a[ss]essing this case, is that this process has been going on for more than a year now and there has been only regression. Likewise, there is little hope that things involving these parents and [the child] will ever change or improve. The court must look at whether Mother and Father will be able to take responsibility for [the child] within a time reasonably calculated to meet her needs, and they cannot. . . . [The child] has been in DHHS custody for almost 13 months. [The child] has been in the care of her loving foster parents for that entire time and made great improvements in her mental, emotional, and physical health. [The child] has clearly bonded with [her] new family and removing her would likely do greater damage than has already been done. Each month is a long time in the life of a child at this age. With no clear timeline in sight, it is apparent that Mother and Father cannot take responsibility for [the child] within a time reasonably calculated to meet her needs.

[¶6] These findings, all of which are supported by competent evidence, are sufficient to support the court's ultimate findings that the parents are unable or unwilling to protect the child from jeopardy or take responsibility for her in a time reasonably calculated to meet her needs, and that both parents

6

have failed to make a good faith effort to rehabilitate and reunify with the child. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii), (iv) (2018); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195.

[¶7] Furthermore, the court did not commit clear error or abuse its discretion in determining that termination of the parents' parental rights was in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a) (2018); *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297. The father contends that the court should have ordered a permanency guardianship rather than the termination of his parental rights. The court did not err or abuse its discretion when it rejected this argument and determined that the child's need for permanency would be best served by freeing her for adoption, particularly when the guardian ad litem expressly opposed a permanency guardianship and there were tensions between the parents and the child's foster family. *See In re Child of Domenick B.*, 2018 ME 158, ¶¶ 8-10, 197 A.3d 1076; *In re Cameron B.*, 2017 ME 18, ¶¶ 12-13, 154 A.3d 1199.

[¶8] We are not persuaded by the parents' arguments concerning the sufficiency of the Department's efforts to rehabilitate them and reunify them with the child. The court carefully considered the Department's reunification efforts, and there is competent evidence supporting its finding that those efforts

were reasonable in the circumstances of this case. We note also that the parents never raised any concerns about the Department's reunification efforts when they had the opportunity to do so prior to the termination hearing; instead, judicial review orders indicate that the parents appeared before the court on two separate occasions and agreed that the Department had "made reasonable efforts to reunify and rehabilitate the family" but that their own efforts toward reunification had been inadequate.

[¶9] Lastly, we discern no abuse of discretion in the court's decision to admit out-of-court statements made by the child. Contrary to the mother's argument that the court should have considered the availability of the child to testify directly before admitting the statements, the rules of evidence that ordinarily pertain to hearsay have been abrogated by the Legislature in child protection cases. *See In re Children of Danielle H.*, 2019 ME 134, ¶¶ 5-7, 215 A.3d 217. By statute, courts have the discretion to "admit and consider oral or written evidence of out-of-court statements made by a child" and to "rely on that evidence to the extent of its probative value." 22 M.R.S. § 4007(2) (2018).

The entry is:

Judgment affirmed.

8

Andrew Wright, Esq., Brunswick, for appellant mother

John Healy, Esq., Healy Law, LLC, Camden, and Amy McNally, Esq., Woodman Edmands Danylik Austin Smith & Jacques, P.A., Biddeford, for appellant father

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Augusta District Court docket number PC-2018-43
FOR CLERK REFERENCE ONLY