MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 68
Docket:      Pen-19-501
Submitted
  On Briefs:  May 4, 2020
Decided:     May 14, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, and CONNORS, JJ.


IN RE CHILDREN OF JACOB S.


PER CURIAM

[¶1] Jacob S., the father, and Jaime S., the mother, appeal from a judgment of the District Court (Lincoln, *Stitham, J.*) terminating their parental rights to their five children.[1]  Both parents challenge the sufficiency of the rehabilitation and reunification efforts made by the Department of Health and Human Services.  The father additionally challenges the court's determination that the termination of his and the mother's parental rights was in the children's best interests.  We affirm the judgment.

[¶2]  The following facts are drawn from the court's findings and from the procedural record.  *See In re Children of Corey W.*, 2019 ME 4, ¶ 2, 199 A.3d 683.

---

[1]  Although several of the father's relatives were granted intervenor status and the maternal grandmother was granted interested person status, those individuals are not involved in this appeal.

[¶3]  This matter began when the Department filed a petition for a child protection order and a request for a preliminary protection order regarding the children on April 28, 2017.  *See* 22 M.R.S. § 4032, 4034 (2020).  The petition alleged that the children were at risk due to their parents' neglect, emotional abuse, and physical abuse.  The court (*Mallonee, J.*) granted the Department's request for a preliminary protection order that same day and placed the children in the Department's custody.  *See id.* § 4034(2).  The parents later waived the opportunity for a summary preliminary hearing.  *See id.* § 4034(4).

[¶4]  The court (*Stitham, J.*) entered an agreed-to jeopardy order as to both parents in November 2017.  *See* 22 M.R.S. § 4035 (2020).  In that order, the court found that the children were in jeopardy as to the mother based on the mother's neglect and abuse, which included hitting the children with a wooden backscratcher, punishing them with extremely hot and/or cold showers, and threatening to shoot herself and them.  The court found that the children were in jeopardy as to the father based on neglect and abuse, which included not protecting the children from the abuse and neglect of the mother, withholding food from them as a punishment, and making threatening statements to them.  Both parents agreed in the order that any visits with the children would occur "when therapeutically recommended."

[¶5]  Throughout the case, all five children remained adamant that they did not want to see the parents.  To support reunification, the Department fired and replaced the children's initial counselors when it became clear that those counselors did not support that goal.  The Department also made it clear to the relative with whom the children were placed that if she or other family members interfered with reunification, the children would be moved.  Nevertheless, as a result of the children's intractable positions and counselor recommendations that they should not be forced to visit with the parents, only one ninety-minute visit between the children and the parents occurred.

[¶6]  In June 2018, the Department filed a petition to terminate the parents' parental rights.  22 M.R.S. § 4052 (2020).  Thereafter, the parties agreed to designate a forensic psychologist as an expert to review the case and provide insight regarding the children's unwillingness to visit with the parents and the lack of reunification progress.  The matter was continued by agreement several times because the forensic psychologist required more time to prepare her report.  When the forensic psychologist's report was finally finished, the court held a five-day hearing on the termination petition in June and July 2019, during which it heard extensive testimony from witnesses including the

4

parents, the forensic psychologist, Department caseworkers, and various counselors.

[¶7] After receiving post-trial written closing arguments and proposed findings from the parties, the court entered an order terminating both parents' parental rights in November 2019. In that order, the court made the following findings:

> The Court finds that the parents did abuse the children while they were in the parents' care. The children have disclosed abuse at the hands of their parents to all six of their counselors, and [the guardian ad litem]. Each found the children credible. Some of the disclosures were consistent with admissions made by the parents in their own testimony, in their conversations with the State Police, and with the Jeopardy language that they agreed to. All of the children's treating therapists found the children's disclosures compelling, and observed physical reactions by the kids consistent with their reports and with kids who have been traumatized. . . . [The forensic psychologist] noted that *sustained trauma-based symptoms cannot be coached*, and that these symptoms have been exhibited since the time the children have come into care.

> [The father] has not made much progress in his reunification efforts. In his testimony at the TPR hearing [the father] denied everything in the Jeopardy Order that he had previously agreed to. He also claimed that the children were not traumatized in his home and that the children were fine prior to being placed with his parents. He essentially indicated that nothing inappropriate happened in his home, but if it did, it was the fault of his parents. [An evaluating psychologist] concluded that [the father] was not demonstrating empathy towards the children at the time of the evaluation he completed in . . . February 2018. His testimony during the hearing indicated that he had not developed an understanding of his children's needs, nor did he take

responsibility for the abuse that had occurred in his home. However it is painfully obvious that [the father] is completely unrealistic of the reality of where each of these children are emotionally and psychologically when he testified at the hearing on 6/12/19, *I would ask the Court to start visitation immediately and bring my kids home.* [The father] testified that what he agreed to in the Jeopardy Order is not true. [The father] has not participated in parenting education despite what the Jeopardy Order states and what he agreed to.

[The mother] has not made much progress in her reunification efforts. Just as [the father] did, in [the mother's] testimony at the TPR hearing she denied everything in the Jeopardy Order that she had previously agreed to. [An evaluating psychologist] expressed concerns about [the mother's] ability to empathize with the children. [The mother] was able to acknowledge some wrong doing on her part, including physical and emotionally abusive behavior. The Court does not find [the mother's] counselor['s] testimony that [the mother] has made *significant progress* on her issues credible. [The mother] also lied to [a police detective] about the use of a backscratcher to hit the children, acknowledged that lie . . . , agreed to a Jeopardy finding about the use of a backscratcher in disciplining the children, and then denied using the backscratcher during the hearing. She indicated that she used the methods promoted in [the parenting book] To Train Up a Child at the behest of her mother in law and indicated that she had never been taught how to be a mother by her own mother . . . . While [the mother] was able to demonstrate some insight about what the children might be feeling in her letter to [the oldest child] in the Spring of 2018, she then exhibited a lack of understanding regarding the children's trauma by supporting placement of the children with her mother, who has no relationship with the children, and who she had claimed to be an alcoholic and abusive towards her.

. . . .

From April 28, 2017, to the present, none of the children have expressed a willingness to visit with their parents. [The GAL] became the third GAL in this case on 10/18/17. Since then at each and every visit with the children she discussed the possibility of contact with their parents and the children in various ways expressed that they did not want to visit with their parents. At no time have any of the six therapists who have treated the children recommended contact between the children and the parents. All have indicated that the children were not ready for contact with their parents, and to force them to visit against their express wishes would be traumatic to the children. . . .

This Court concludes that speculation on what might have been if the children had been placed at the outset in a foster home and kept together[,] or if the children had been separated, with each living in his/her own separate foster home[,] or if any of the numerous counselors were more skilled or tried something different . . . is just not the point. *What could have happened, did.* This mother and this father each abused each of these children, causing each child to go a dark place, . . . causing the children at the hands of [the father] to be entrusted to [relatives], causing the children to go into DHHS custody[,] and so on and so forth until these parents and these five children all arrived at the last day of that TPR hearing. The Court concludes that any possibility of reunification of any of these children with their parents is years away, far more than two years—if at all.

[The children] each need permanency. Each of these children deserves certainty and stability. [The relative with whom they live] has given them that. Instability and impermanency are contrary to the welfare of each of these children. The children cannot wait years for permanency on the off chance that the children may be able to reunify with their parents. Each child has developed a close attachment to [the relative with whom the children live] . . . and most encouragingly each child has started the process of being an individual. [The relative] is meeting the children's needs, and any removal from [the relative's] home, and any separation of the siblings would be devastating to each and every one of them. Such

would not be in any of their best interests.  The reality is that the best interests of these children requires their remaining in the nurturing and stable home provided by [the relative] who wants to adopt each and every one of them. . . .

. . . .

The Court further finds that DHHS has made reasonable efforts to reunify and rehabilitate the parents with each child and to develop and finalize permanency plans for each child.  The Court takes particular note of the Department['s] commendable efforts of: discharging the first batch of counselors; and most noteworthy, paying for the additional costs to secure the report of [the forensic psychologist] and her lengthy testimony as well.[2]  The Court further finds that the Department's proposal of adoption as the permanency plan for each child is appropriate and in each child's best interests at this time.

[¶8]  These findings, all of which are supported by competent evidence except as noted *supra* n.2, are sufficient to support the court's ultimate findings that the parents are unable to protect the children from jeopardy or take responsibility for them in a time reasonably calculated to meet their needs.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii) (2020); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195.

---

2  Although the record reflects that the forensic psychologist's work was the result of cooperation between the Department and the parents, the record does not clearly indicate the extent to which the Department paid for some of the forensic psychologist's costs.  Nevertheless, neither parent challenges that aspect of the court's judgment, and given the other evidence supporting the court's determination that the Department's reunification efforts were reasonable, any error would be harmless.  *See In re Stephenie F.*, 2018 ME 163, ¶ 2 n.2, 198 A.3d 203.

[¶9] We find no merit in the parents' arguments concerning the sufficiency of the Department's efforts to rehabilitate them and reunify them with the children. The court carefully considered the Department's reunification efforts, and its finding that those efforts were reasonable in the challenging circumstances of this case is supported by competent evidence. *See In re Child of Nicholas W.*, 2020 ME 16, ¶ 8, --- A.3d ---; *In re Hannah S.*, 2016 ME 32, ¶ 12, 133 A.3d 590.

[¶10] Finally, the court did not commit clear error or abuse its discretion when it determined that the termination of the parents' parental rights was in the children's best interests. *See* 22 M.R.S. § 4055(1)(B)(2)(a) (2020); *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297. The father contends that the children have a therapeutic need to have contact with him and the mother, and that the court should have kept the case open. Contrary to the father's argument, the court did not err or abuse its discretion when it determined that the children needed permanency after more than two years in the Department's custody, and that such permanency would be best accomplished by freeing the children for adoption.

The entry is:

> Judgment affirmed.

Wayne Doane, Esq., Exeter, for appellant mother

Erik T. Crocker, Esq., Farrell, Rosenblatt & Russell, Bangor, for appellant father

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lincoln District Court docket number PC-2017-13
FOR CLERK REFERENCE ONLY